SAVANNAH HOPKINS v. HIGHLAND DAIRY FARMS Co., a Corporation, and JAMES A. FLAVIN, Defendants-Appellants.—159 S. W. (2d) 254.

Division One, December 12, 1941.

Rehearing Denied, February 26, 1942.

*Jones, Hocker, Gladney & Grand* and *Lon Hocker, Jr.,* for appellants.

*Everett Hullverson* for respondent; *Orville Richardson* of counsel.

HAYS, J.—This was an action for personal injuries brought by the present respondent against the Highland Dairy Farms Co., a corporation, and its employee James A. Flavin. A trial in the circuit court of the City of St. Louis resulted in a verdict for the defendants and the plaintiff filed her motion for a new trial, which was sustained on the sole ground that the court had erroneously given instruction number 6, hereinafter set out, at the request of the defendants. From the sustaining of this motion the defendants have appealed.

The instruction complained of by the plaintiff and held erroneous by the trial court purported to embody the doctrine of sole cause. Since this instruction was requested by and given at the instance of the defendants we must look to their evidence in order to determine whether there was sufficient proof to warrant the giving of the instruction. [Long v. Mild, 347 Mo. 1002, 149 S. W. (2d) 853, l. c. 857; Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S. W. (2d) 562; Poague v. Kurn, 346 Mo. 153, 140 S. W. (2d) 13.]

We, therefore, state the facts from the point of view of the defendants' evidence.

Plaintiff was the proprietor of a retail liquor establishment and Eugene J. Piper was her manager in charge of such place of business. Both of them resided in the same building in which the tavern was located. After closing the tavern on Friday night, May 31, 1940, plaintiff and Piper entertained a few friends and about 3 to 3:30 on ▨ Saturday morning they decided to drive to St. Louis to obtain some chop suey for the guests. They made the trip in an automobile belonging to Piper. After obtaining the food they started back to the tavern driving south on Sarah Street, straddling the west rail of the southbound streetcar track. When they arrived at the intersection of Sarah and Gratiot Streets they collided with a truck belonging to the defendant Highland Dairy Farms Company and driven by the defendant James A. Flavin. This truck had come west on Gratiot Street and was, at the time of the collision, proceeding across the intersection of Sarah Street. The truck was loaded with 7500 pounds of dairy products and was being driven by Flavin in the scope of his employment as agent and servant of his co-defendant. Defendants' evidence tended to show that the front of Piper's car and the right-hand side of the truck were damaged.

Gratiot Street is 36 feet 2 inches wide from curb to curb and Sarah Street is also approximately 36 feet wide from curb to curb. As Flavin approached the east-building line on Sarah Street he looked first to the north and then to the south. From this point he could see north along Sarah Street for a distance of some 90 feet. He saw no vehicle approaching from either direction and he then started across Sarah Street moving at a speed of about 15 miles an hour. [Plaintiff's evidence tended to show that the truck was being driven about 60 miles per hour.] He looked north again as he came to the streetcar tracks in the center of Sarah Street and saw an automobile approaching him very fast from that direction. He attempted to swing to the left and set his brakes, when he was struck by Piper's car. The evidence tended to show that the brakes of the truck were in good condition and the vehicle could be stopped within 20 feet from an initial speed of 15 miles per hour.

The case was submitted to the jury upon alleged primary negligence of the truck driver in failing to keep a careful lookout and thereby discover the automobile in which plaintiff was riding and upon the issue of alleged humanitarian negligence of the driver in failing to avoid the accident by stopping or swerving to the left after he had discovered plaintiff in a position of imminent peril. The court, at the instance of the plaintiff, charged the jury that the negligence, if any, of Piper could not be imputed to her.

Instruction number 6, given by the court at the instance of the defendants and complained of herein by the plaintiff, is as follows:

"The court instructs the jury that if you find that Piper, the driver of the car in which plaintiff was riding, negligently drove his automobile at a high and excessive rate of speed and that this negligence, if you so find, and not any negligence of the defendants, was the direct and proximate cause of the collision, then your verdict must be in favor of the defendants."

The plaintiff contends that there was no evidence in the record on which to base a sole-cause instruction. As we have said, defendants' evidence tended to show that Flavin carefully looked both to the right and to the left and straight ahead before attempting to cross Sarah Street; that he then proceeded across the intersection at a speed of 15 miles per hour which would be 22 feet per second. From the time he entered the intersection to the time the rear portion of his truck had entirely cleared it on the west would be but little more than 2 seconds. It would be physically impossible for the driver of a vehicle to look to the right, to the left and straight ahead all at the same time. Before entering the intersection Flavin looked to the right and saw that Sarah Street was clear for a distance of 90 feet. Plaintiff's petition alleges, and we may consider this as an admission by her, that the speed of vehicles in St. Louis is limited by ordinance to 30 miles per hour, which is 44 feet per second. Flavin had a right to assume that vehicles approaching from the north would be obeying this ordinance and that he would have two seconds before any unseen vehicle could reach the intersection which, as we have seen, would put him almost entirely in the clear and certainly sufficiently far across as to be out of danger of a collision. This being true, he was guilty of no negligence in failing to keep his gaze directed toward the right as he would necessarily have to look in the direction in which he was traveling, particularly in view of the necessity of crossing the streetcar tracks slowly and carefully to avoid the displacement of his load of milk. If, then, we believe the evidence of Flavin on this point he, himself, was guilty of no negligent conduct here from the point of view of primary negligence or from that of humanitarian negligence, for he could not, even with the exercise of the highest degree of care, have discovered the peril of the plaintiff after she entered the zone of peril and in time to have avoided the accident either by stopping or swerving. On the other hand, the line of reasoning above set forth demonstrates that Piper was negligently driving at an excessive rate of speed since if his speed had been limited to 30 miles per hour, the collision could not have occurred. The fact that he was driving even faster than 30 miles an hour is demonstrated by the evidence that his brakes were applied about 90 feet north of the point of collision and his tires were skidded for that distance, which could not have been true unless his speed had been very great. We, therefore, hold that the evidence

warranted and required the court below to give, at the instance of the defendants, a proper sole-cause instruction.

■■ Plaintiff, however, contends that the instruction here given was improper in form. We have recently clarified the doctrine of sole cause and carefully analyzed the requisite of proper instructions embodying that doctrine. [Long v. Mild, supra; Shields v. Keller, 348 Mo. 326, 153 S. W. (2d) 60; Stanich v. Western Union Telegraph Co., 348 Mo. 188, 153 S. W. (2d) 54.] In these three cases exhaustive and learned opinions were written by Commissioner HYDE and it will be unnecessary for the court now to add to what was there said. We held that it was unnecessary in a sole-cause instruction to specifically negative the idea of imputed negligence, or, in a humanitarian case, the idea of contributory negligence; but that the instruction must specifically negative the existence of any negligence of the defendant and must hypothesize the specific negligence of the plaintiff or of a third person relied on as the sole cause of the collision.

Turning now to the instruction here under consideration, we note that the language therein contained is most unusual and peculiar. The expression "sole cause" is not employed. We do not mean to say that these particular words must be used in every sole-cause instruction, although there is no particular reason why they should not be employed, and they certainly would make the instruction much clearer. But the language here used is, we think, susceptible of several constructions. The jury are told that if Piper drove his automobile at a negligently high rate of speed and that this negligence "and not any negligence of the defendants, was the *direct and proximate cause* of the collision," their verdict must be for the defendants. The language is susceptible of the construction that even though Flavin had been negligent, intervening negligence of Piper would absolve the defendants from liability. We must bear in mind that the primary function of instructions is to instruct the jury and that juries are composed of laymen. To a group of lawyers the words "direct and proximate cause" have a more or less definite meaning, although learned treatises have been written for the purpose of attempting to ascertain just what that meaning is. But to laymen the legal connotation of the phrase is by no means clear. They might readily assume that the instruction meant that if Piper's negligence was the last cause of several, including the antecedent negligence of Flavin, to operate in producing this collision, Flavin was to be exonerated. Such, of course, is not the law. If Flavin had been negligent in failing to observe the position of peril of the plaintiff after she had entered the zone of peril and if thereafter the negligence of Piper had continued, the two sets of negligent acts could constitute concurrent causes of the injury complained of and under these circumstances Flavin and his employer would unquestionably remain

liable to the plaintiff. [Cf. King v. Rieth, 341 Mo. 467, 108 S. W. (2d) 1, 1. c. 5.] Where an instruction is susceptible of two constructions and doubt may, therefore, arise as to its meaning, and one of such constructions is at variance with the law, it is error for the trial court to give it. [Morris v. Morris, 28 Mo. 114, 1. c. 118; Schipper v. Brashear Truck Co. (Mo.), 132 S. W. (2d) 993, 1. c. 996.] The trial court, therefore, correctly held, in ruling upon the motion for new trial, that the giving of defendants' instruction number 6 was erroneous and prejudicial to the plaintiff. The judgment of the trial court in granting a new trial was consequently correct and should be affirmed. It is so ordered. All concur.