JAMES BOYCE, APPELLANT, v. KEENE SADLER DONNELLAN, RESPONDENT.
—168 S. W. (2d) 120.

St. Louis Court of Appeals. Opinion filed February 2, 1943.

Appellant's Motion for a Rehearing Overruled February 19, 1943.

*Frank E. Mathews* for appellant.

*Wilbur C. Schwartz* and *Morton K. Lange* for respondent.

SUTTON; C.—This is an action to recover damages for personal injuries sustained by plaintiff as the result of the deroadment of an automobile in which he was riding. The trial, with a jury, resulted in a verdict for defendant. Judgment was given accordingly, and plaintiff appeals.

Plaintiff alleges in his petition that, on August 7, 1940, he was riding as a passenger in an automobile being driven and operated by defendant over and along highway No. 66 in St. Louis County, and that defendant negligently ran off the highway and roadway

and into and out of a ditch and into a brick wall, thereby directly causing plaintiff to sustain the injuries for which he sues.

Defendant's answer is a general denial.

There were four persons in the automobile at the time of the accident. Defendant was driving the automobile. Sol Gross was seated beside her. Plaintiff was seated on the right and James R. Johnson on the left of the rear seat. Defendant was unmarried at that time. The parties were all in the employ of the Philip Morris Company. Defendant, who was then Miss Sadler, was employed as a stenographer. Plaintiff, Johnson and Gross were salesmen.

Prior to the accident the parties had agreed or arranged to go somewhere—nowhere in particular. Plaintiff and Gross went to Johnson's home. Plaintiff arrived about noon. Gross arrived about one or two o'clock in the afternoon. Plaintiff had one or two highballs with Johnson that afternoon. Gross left the Johnson home to get Miss Sadler and returned with her about four o'clock. Miss Sadler had one drink. Plaintiff had a drink after Miss Sadler arrived. They all agreed to go somewhere and drove from the Johnson home to Bill Merritt's place. Gross drove the automobile. It was his automobile. On the way to Merritt's place they stopped a while at Busch's place. Miss Sadler had a dinner date with Gross. She was his date. At Merritt's place the party had sandwiches and beer. Upon leaving Merritt's place they drove to a filling station for gas. Upon leaving the filling station defendant took the wheel and drove westward on highway 66 a distance of about seven miles to the place of the accident.

Defendant testified that she took the wheel because Gross had been driving too fast and was driving with a highball in his hand; that she got out of the automobile and asked him if she could drive and he said she could. Defendant was an experienced driver. There is no contention that she was intoxicated. The witnesses testified that she was duly sober and showed no evidences of intoxication. The automobile was a large Ford Mercury. The top was down. The highway on which defendant was driving at the time of the accident was a concrete four-lane highway. At the time the automobile left the roadway she was passing another automobile going in the same direction. She was passing on the left in the second lane from the right. She testified that in turning the wheels of the automobile to the left in passing the other automobile the steering wheel locked so that she was unable to control the automobile and it went into the ditch on the left or south side of the highway.

Plaintiff testified that defendant had been driving the automobile going west from seven to ten miles before it went off the road; that she was driving this seven or ten miles at a speed of between seventy-five and eighty miles an hour; that he warned her of her speed two or three times; that she responded that she had the automobile under

control and not to worry; that Johnson warned her and he thought Gross did too; that she did not decrease her speed after he warned her; that after he last warned her the automobile traveled possibly a mile or two before it went off the road; that the automobile traveled forty or fifty yards, or something like that, from the time it began to go in a southwardly direction until it finally ran off the road; that there was a ditch along the south side of the highway about two and a half or three feet deep and eight or ten feet wide; that the automobile angled across the highway into the ditch; that it ran into the ditch until it came to a side road that was raised above the ditch, and when the automobile hit this side road he was thrown out on the right-hand side of the automobile onto a pile of rocks five or six feet from the path of the automobile, and that the next he saw of the automobile it was about one hundred yards down in the field up against the foundation of a house that was being constructed; that the automobile traveled in the ditch after it left the roadway ten or fifteen yards; that no one in the automobile was intoxicated; that he had a drink or two at Johnson's and a drink at Merritt's place.

Johnson testified that as Miss Sadler pulled out of the filling station she immediately started driving at an excessive rate of speed; that the automobile was going seventy or seventy-five miles an hour; that he told her to slow down probably two or three times; that the next thing he knew the autmobile was going off the road and down the embankment into the ditch, and when it hit the country lane he was thrown out and the automobile came to rest against the foundation down the highway; that when the automobile started to go off the road defendant said she couldn't steer it; that she screamed out that she couldn't steer it; that she was frightened; that he knew that she couldn't steer the automobile; that she couldn't control it; that she suddenly screamed that she couldn't steer the automobile; that the automobile veered to the left rather gradually; that when Miss Sadler said she couldn't steer the automobile Gross reached over and tried to help her, and he was helping her; that when she said she couldn't steer the automobile it left the highway.

Defendant testified that nothing was said to her about driving too fast; that she was sure that the steering wheel was locked because it wouldn't turn; that all of a sudden she turned the automobile to pass another automobile and when she tried to turn the automobile back she couldn't turn it; that she was going about fifty miles an hour and was afraid to put the brakes on at once because the automobile might turn over, and Gross tried to turn the wheel; that from where the automobile went off the slab, or off the highway, to the foundation of the building is probably 200 feet or 100 yards; that she wasn't bothered about the distance, that what she was bothered about was stopping the automobile; that she knew the steering wheel locked because she was driving the automobile and the steering wheel wouldn't

turn and it must have been locked; that she could not be sure as to the highest speed she attained after she took the wheel, but that she was sure that it was not as high as seventy miles per hour; that it was not higher than sixty miles per hour; that she naturally put her foot on the accelerator to pass the other automobile, and that she possibly was going sixty-five miles per hour in passing the other automobile; that as soon as she found the wheel would not steer she slowed down; that she immediately took her foot off the accelerator and put it on the brake; that she did not apply the brakes full force at first because she felt that she might turn the automobile over; that she applied the brakes gradually; that the distance from the point where she found that the wheel did not steer to the point where the automobile went off the road into the ditch was half the distance across the road and the shoulder running at an angle; that, in other words, the automobile traveled about seventy feet after the wheel would not steer until it went off the road; that the automobile was traveling about forty-five or fifty miles per hour when it left the highway; that when she knew that the steering wheel was locked she was going about fifty-five miles per hour; that the automobile went off the road and down into the ditch and up on the other side traveling southwest; that she thought it hit the road that crosses the ditch and then left the ditch and traveled across the field and hit the foundation; that from the time the steering gear locked until the time the automobile hit the building she was trying to stop the automobile; that she was always trying to stop it; that when the automobile finally hit the foundation it was traveling ten or fifteen miles an hour; that the distance from the place where the automobile went off the road to the foundation was about 150 feet; that the distance from the place where the steering wheel locked on the road and the place where the automobile went off the road was about sixty or seventy feet.

The court gave to the jury instruction No. 1 at the instance of the plaintiff, as follows:

''The Court instructs the jury that it was the duty of the defendant, in the operation of the automobile, to exercise the highest degree of care, and to drive the same in a careful and prudent manner and at a rate of speed so as not to endanger the life or limb of any person, and if you find from the evidence that the defendant, at the time and place mentioned in evidence, drove and operated the automobile at an excessive and dangerous rate of speed and at a rate of speed which endangered the life or limb of the plaintiff, then the defendant, in so operating the automobile at a dangerous and excessive rate of speed, was guilty of negligence, and if you further find and believe from the evidence that plaintiff was injured as a direct and proximate result of such negligence on the part of the defendant, then your verdict will be in favor of the plaintiff, and this is true even though you may also find that the locking of the steering wheel of said automobile directly contributed to cause plaintiff's injuries.''

The court gave to the jury instruction No. 2 at the instance of the defendant, as follows:

"The Court instructs the jury that if you find from the evidence that at all times herein mentioned the defendant was in the exercise of the highest degree of care in the driving and the operation of the Mercury automobile mentioned in the evidence, and that defendant was driving said automobile westwardly on Highway No. 66 and that as she was driving said automobile on said highway she turned the wheels of said car towards her left to pass another automobile traveling in the same direction on said highway and that while the wheels of said automobile were turned to the left the steering wheel suddenly and unexpectedly locked, and that by reason thereof- the defendant was unable to steer or control said automobile or turn the wheels thereof back to her right, and that said automobile ran off the highway and into a ditch on the left side thereof, and that the locking of said steering wheel was the sole and proximate cause of said automobile running off the highway and into the ditch and of plaintiff's injuries, and that the running of said automobile off the highway into said ditch and plaintiff's injuries were not due to any negligence on the part of the defendant in any of the particulars set out in other instructions herein, then plaintiff is not entitled to recover, and your verdict shall be in favor of the defendant."

Plaintiff assigns error here for the giving of defendant's instruction No. 2 on the ground that it does not sufficiently hypothesize facts which would tend to show that defendant was free from negligence, or which would warrant the jury in finding that the locking of the steering wheel was the sole cause of plaintiff's injuries.

Many so called sole cause instructions have been under review by our Supreme Court in recent years. Most of them were held erroneous. All of them are different in one respect or another from the instruction we are concerned with here. The court has recently clarified the doctrine of sole cause and carefully analyzed the requisites of proper instructions embodying the doctrine. [Long v. Mild, 347 Mo. 1002, 149 S. W. (2d) 853, l. c. 857; Shields v. Keller (Mo.), 153 S. W. (2d) 60; Stanich v. Western Union Tel. Co. (Mo.), 153 S. W. (2d) 54.] In these three cases exhaustive and learned opinions were written by Judge HYDE, holding that it was unnecessary in a sole cause instructoin to specifically negative the idea of imputed negligence, or in a humanitarian case the idea of contributory negligence, but that the instruction must specifically negative the existence of any negligence of the defendant and must hypothesize the specific negligence of the plaintiff or of a third person relied on as the sole cause of the accident or injury. [Hopkins v. Highland Dairy Farms Co. (Mo.), 159 S. W. (2d) 254, l. c. 257.]

In all of the cases which have been brought to our attention involving sole cause instructions the negligence relied on as the sole cause

was the negligence of the plaintiff, where humanitarian negligence was relied on by plaintiff for a recovery, or the negligence of a third party. We have no such case before us here. Plaintiff here relies solely on primary negligence. His instruction submitted his case on the sole theory of primary negligence on the part of defendant in driving the automobile at an excessive and dangerous rate of speed. The issues for the jury thus became quite simple.

The underlying principle governing the rulings on sole cause instructions, where the negligence of the plaintiff, in humanitarian cases, or the negligence of a third party, is relied on by defendant as the sole cause of the injury, is that such an instruction must be so drawn as to avoid carrying to the jury the implication that the concurrent negligence of defendant and the plaintiff, or the concurrent negligence of defendant and the third party, will not authorize a recovery, or, in other words, that the negligence of the plaintiff, or the negligence of the third party, concurring with the negligence of defendant to cause the injury will acquit the defendant of liability. If the instruction, read alone, or with other instructions given, is free from this fault it is not held bad. If the instruction so read submits facts showing a sole cause situation it is sufficient. [Hopkins v. Highland Dairy Farms Co. (Mo.), 159 S. W. (2d) 254; Long v. Mild, 347 Mo. 1002, 149 S. W. (2d) 853; Shields v. Keller (Mo.), 153 S. W. (2d) 60; Stanich v. Western Union Tel. Co. (Mo.), 153 S. W. (2d) 54; State ex rel. Snider v. Shain, 345 Mo. 950, 137 S. W. (2d) 527; McGrath v. Meyers, 341 Mo. 412, 107 S. W. (2d) 792; Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S. W. (2d) 562; Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S. W. (2d) 742; Dilallo v. Lynch, 340 Mo. 82, 101 S. W. (2d) 7; Borgstede v. Waldbauer, 337 Mo. 1205, 88 S. W. (2d) 373.]

It so happens that in all the cases decided by our Supreme Court involving sole cause instructions that have been brought to our attention the acts relied on as the sole cause were negligent acts. But it is, of course, not an essential of the sole cause doctrine that the act relied on as the sole cause was a negligent act. Whether the act was negligent or never so blameless is a matter of no concern. It is only essential that it was the sole cause of the injury. The sole cause may be the action of some thing, or of the elements, or it may be an existing physical condition, for which action or condition no human agency was directly responsible.

In the present case the action relied on as the sole cause of plaintiff's injury was the locking of the steering wheel. The crucial issue for the jury was as to whether defendant was guilty of negligence in driving the automobile at an excessive rate of speed which concurred with the locking of the steering wheel to cause the injury, or whether the locking of the steering wheel was the sole cause of the injury. And

the question here is as to whether or not the instructions, read together, properly submitted that issue.

Plaintiff urges that defendant's instruction fails to submit facts showing a sole cause situation, but submits only legal conclusions. We do not think this is so. The instruction requires a finding that the defendant was in the exercise of the highest degree of care in the driving and in the operation of the automobile. This obviously submits not a legal conclusion but an ultimate fact. It submits not merely in general terms that the defendant was in the exercise of the highest degree of care, but submits that she was in the exercise of the highest degree of care in the driving and operation of the automobile. It is broader in its terms than plaintiff's instruction in that it does not confine the jury to the driving and operation of the automobile at an excessive and dangerous rate of speed. But this was to the advantage of plaintiff. Certainly it was not to his disadvantage. The jury must have understood that the exercise of the highest degree of care in the driving and operation of the automobile included its speed. But if they did not so understand from the reading of this clause of defendant's instruction, they must have so understood when reading it in connection with plaintiff's instruction, which told the jury that it was the duty of defendant in the operation of the automobile to exercise the highest degree of care and to drive the same in a careful and prudent manner and at a rate of speed so as not to endanger the life or limb of any person, and required a finding as an essential to a recovery by plaintiff that defendant drove and operated the automobile at an excessive and dangerous rate of speed. Whether or not the automobile was being driven at an excessive and dangerous rate of speed was, of course, an issue of fact for the jury to determine, and we do not see how the jury reading the two instructions together could have failed to understand that they were called upon to determine that issue. Moreover, plaintiff's instruction told the jury that if defendant drove the automobile at an excessive and dangerous rate of speed he was guilty of negligence, and defendant's instruction required the jury to find that plaintiff's injuries were not due to any negligence on the part of defendant in any of the particulars set out in other instructions, thus expressly referring the jury to and requiring them to decide whether defendant had committed the specific act— the driving of the automobile at an excessive and dangerous rate of speed—set out in plaintiff's instruction, which would constitute negligence on the part of defendant. Certainly this does not require a finding of a mere legal conclusion. It requires a finding of a specific ultimate fact, set forth in plaintiff's instruction, that is, that defendant was not driving the automobile at an excessive and dangerous rate of speed. This is in precise accord with what the Supreme Court *en banc* said in State ex rel. Snider v. Shain, 345 Mo. 950, 137 S. W. (2d) 527, 1. c. 531. In addition, defendant's instruction required the

jury to find that because of the locking of the steering wheel defendant was unable to steer or control the automobile, and that the locking of the steering wheel was the sole and proximate cause of the automobile running off the highway and of plaintiff's injuries.

Plaintiff further contends that defendant's instruction should have required the jury to find that she was at all times operating the automobile at a reasonable rate of speed under the circumstances and conditions. This contention is sufficiently answered by what we have already shown, that is, that the instruction read with plaintiff's instruction requires a finding that defendant was in the exercise of the highest degree of care in the driving and operation of the automobile and that the automobile was not being driven at an excessive or dangerous rate of speed.

Plaintiff further contends that the instruction should have required a finding that the locking of the steering wheel was not due to any fault of the defendant. As to this it will suffice to say that there was no evidence showing or tending to show that the locking of the steering wheel was due to any fault of defendant. Moreover, plaintiff did not submit the case on the theory of negligence in that respect.

Plaintiff further contends that the instruction should have required a finding that the locking of the steering wheel was the sole cause of the automobile running across the private road intersecting the ditch and running into the field, whereas it only required a finding that the locking of the steering wheel was the sole cause of the automobile running off the highway and into the ditch. In this plaintiff overlooks that the instruction also required a finding that the locking of the steering wheel was the sole cause of plaintiff's injury. There was no dispute about the action of the automobile after it left the highway. Reading the whole instruction together with plaintiff's instruction, we do not see how it could have misled the jury.

Plaintiff also complains that the giving of defendant's instruction constitutes reversible error because there was no evidence from which the jury could find that the locking of the steering wheel was the sole and proximate cause of plaintiff's injury, or that by reason of the locking of the steering wheel defendant was unable to control the automobile. Plaintiff contends that the action of the automobile after the locking of the steering wheel shows that it was running at an excessive, dangerous and negligent rate of speed; that if the automobile had not been running at such excessive rate of speed defendant by the application of the brakes would have stopped the automobile before it struck the fill of the private roadway across the ditch, or at least before it ran out into the field and struck the building foundation. We are unable to concur in this view. The evidence shows that defendant was greatly frightened when she discovered that the steering wheel was locked so that she was unable to steer the automobile. According to her testimony the automobile was running from fifty to

sixty miles per hour when the steering wheel locked. The automobile ran sixty or seventy feet before it ran into the ditch, and ran about thirty feet farther before striking the fill of the roadway across the ditch. Running at fifty miles per hour the automobile would run seventy-five feet per second, at sixty miles per hour it would run ninety feet per second. Defendant did not apply the brakes full force immediately for fear of turning the automobile over. Due allowance must be made for the state of mind of defendant resulting from such a sudden and terrifying emergency. We must also consider that she was subjected to the violence developed by the action of the automobile in running into the ditch and upon and over the fill in the ditch, which was sufficient to throw two of the passengers out of the automobile. From such violence defendant must necessarily have been thrown about more or less so as to interfere with her ability to manage the automobile. These things are sufficient to account for the distance the automobile ran into the field before it stopped. In this connection we must not forget that the burden was on plaintiff to show that the automobile was being driven at a negligent rate of speed. Under all the facts and circumstances in evidence we cannot say that such negligence was shown as a matter of law. Moreover, plaintiff having voluntarily submitted that issue to the jury, is in no position to urge here the insufficiency of the evidence to warrant such submission.

Plaintiff in support of his contention that there was no evidence from which the jury could find that by reason of the locking of the steering wheel defendant was unable to control the automobile, urges in argument that the automobile could have been controlled by the brakes as well as by the steering wheel, and that while the locking of the steering wheel may have made it impossible for defendant to guide the automobile it had nothing whatever to do with her control of the automobile by applying the brakes. We do not think this argument is sound. The evidence shows, or tends to show, that defendant's inability to control the automobile was the direct result of the locking of the steering wheel. It shows, or tends to show, that defendant did all she could to stop the automoble by the use of the brakes. In fact plaintiff does not contend that she was in any way negligent in her efforts to control the automobile by the use of the brakes after the steering wheel locked.

Plaintiff complains of instruction No. 3, given at the instance of defendant, as follows:

"The Court instructs the jury that the charge laid by the plaintiff against the defendant in this case is one of negligence. Recovery may not be had on a charge of negligence except when such charge is sustained by the preponderance, that is, the greater weight of the credible evidence, to the reasonable satisfaction of the jury.

"It does not devolve upon the defendant to disprove said charge, but rather the law casts the burden of proof in reference to said charge

upon the plaintiff and said charge of negligence must be sustained by the preponderance, that is, the greater weight of the credible evidence, to the satisfaction of the jury.

"If, therefore, you find the evidence touching the charge of negligence against the defendant does not preponderate in favor of the plaintiff, or is evenly balanced, then and in that case plaintiff is not entitled to recover agaist the defendant and you will find your verdict for the defendant."

Plaintiff complains of this instruction on the ground that it requires a higher degree of proof than the law requires in that it requires that the charge of negligence must be sustained to the satisfaction of the jury.

Our Supreme Court en banc, in Shepard v. Schaff, 241 S. W. 431, responding to a like criticism of an instruction there under review, said:

"It is well settled and has been frequently ruled that it is not reversible error to require the jury to be satisfied from the evidence of the facts necessary to make out the plaintiff's case before he can recover."

In Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S. W. (2d) 742, the court had under review an instruction just like the instruction complained of here, and the same complaint was made against it. The court held the instruction to be in proper form.

In Mitchell v. Dyer (Mo.), 57 S. W. (2d) 1082, l. c. 1083, the court, criticising an instruction there under review, made this pertinent observation:

"A short, simple instruction, telling the jury that the burden is on plaintiff to prove his case by a preponderance or greater weight of the credible evidence, and that unless he has done so the jury must find for defendant, ought to be sufficient to inform the jury what plaintiff is required to do. A plain declaration to that effect will be easily understood by a jury. The more the instruction is elaborated upon, the more complex it becomes and the more it is likely to be misunderstood." [See, also: Rouchene v. Gamble Const. Co., 338 Mo. 123, 89 S. W. (2d) 58, l. c. 63; Nelson v. Evans, 338 Mo. 991, 93 S. W. (2d) 691, 695; Seago v. New York Central R. Co. (Mo.), 164 S. W. (2d) 336, l. c. 341.]

In the Seago case Instruction 4 required the plaintiff to prove his case to the satisfaction of the jury by a preponderance or greater weight of the evidence, and the court, after criticising the instruction, said:

"Since we have held that Instruction 6 was bad, it will not be necessary to specifically rule the assignment on Instruction 4. What we have said of this instruction ought to be a sufficient warning to the bar and trial courts to observe the admonition in the Rouchense case, *supra,* as to burden of proof instructions."

76

It thus appears that the court did not rule the instruction reversibly erroneous.

So far as we are advised the ruling in the Shepard case and in the Doherty case has never been overruled. Those cases are therefore necessarily controlling here.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.