BETTY SEMAR, an Infant, by Her Next Friend, BURL SEMAR, Her Father, v. CARL E. KELLY, Appellant.—No. 38586.—176 S. W. (2d) 289.

Division Two, December 6, 1943.

Motion for Rehearing Overruled, January 3, 1944.

*Oliver J. Miller* and *Lashly, Lashly, Miller & Clifford* for appellant.

*Edwin A. Smith* for respondent.

■■■ BARRETT, C.—Through her next friend Betty Semar, thirteen years of age, instituted this action for personal injuries against Carl E. Kelly. Upon a trial of the case the jury ■■■ returned a verdict in favor of the defendant, Kelly. . The trial court sustained her motion for a new trial for the assigned reason that it had misdirected the jury by instruction No. 4 and the question on this appeal is whether the instruction was so prejudicial to a fair presentation and decision of the plaintiff's case that she is entitled to a new trial.

Betty's cousin, Jewell Williams (aged twenty-two), and two of his girl friends were at Betty's home in the late afternoon of October

12, 1941. About seven o'clock Jewell started to take one of the girls home in a borrowed 1941 Chevrolet coach. Betty and two of her friends went along for the ride. Jewell and the two older girls sat in the front seat while Betty and her friends sat in the back seat. Betty and her witnesses testified that as Jewell drove over the brow of a hill north on January Avenue at a speed of about twenty-five miles an hour Mr. Kelly was coming up the hill from Chandler Street at a speed of about thirty-five miles an hour. When they saw Mr. Kelly and the lights of his car he was about 100 feet away and his 1938 Ford coupe was entirely over on the east or wrong side of the pavement. Jewell sounded the horn on the car he was driving, swerved to the left and applied the brakes but the cars collided in the middle of the street, the left front of both cars impacted.

Mr. Kelly, his wife and their baby were returning home from eighty miles west of Vandalia, Illinois. Mr. Kelly and his witnesses testified that when he approached January Avenue he almost came to a stop in turning left onto the street. His car was in low gear and by the time he had completed the turn his car was in the middle of the west side, the right side, of the pavement and was never, at any time, on the east or wrong side of the pavement. They say that when they were about forty or fifty feet up the hill away from Chandler Street a car suddenly came over the crest of the hill and its headlights were "straddle" the middle line of January Avenue. They say the car was travelling at a speed of forty to forty-five miles an hour—one witness said "like a streak." Kelly swerved to the right but the speed of the other car was such that he could not avoid it even though his car was three to four feet west of the center line of the pavement at the instant they collided.

There were but two instructions specifically and factually hypothesizing the contrasting theories of liability and nonliability. The five other instructions abstractly defined terms, advised the jury how they could return a verdict and how to measure any damages they might find. For Betty Semar Kelly's liability was hypothesized upon a finding that the proximate cause of the collision and her injuries was his primary negligence of driving and operating his automobile on the east or wrong side of January Avenue, not as close to the right or west side of the street as practicable. The facts of the collision and the circumstances of the parties, as shown by her evidence, were narrated and her evidence as to the manner in which Kelly was said to have driven his car was hypothesized and if the jury believed her evidence and found those to be the facts the cause of the collision was Kelly's being on the wrong side of the street. Betty was a guest in the car driven by Williams and it was not claimed that she personally was negligent in any manner. Seago v. New York Central Ry., 349 Mo. 1249, 164 S. W. (2d) 336. And, by specific direction of both the plaintiff and the defendant the jury were told that they could not

impute any negligence they might find Williams guilty of to her. Mendenhall v. Neyer, 347 Mo. 881, 149 S. W. (2d) 366. Kelly's theory of his nonliability was that the collision and injuries complained of were not due to negligence on his part but were due solely to the negligence of Betty's host, Jewell Williams, in driving and operating the automobile in which she rode at a dangerous and excessive rate of speed. His theory of nonliability was hypothesized by instruction No. 4. This instruction began by telling the jury that it was Williams' duty to exercise the highest degree of care in operating the automobile in which Betty rode and then said:

". . . at a rate of speed which was careful and prudent and at such a speed as not to endanger the life or limb of any person there. And in this connection the court instructs you that if you believe and find from the evidence that on the occasion mentioned in the evidence the driver of the automobile mentioned in the evidence drove said automobile towards and over the crest of the hill mentioned in the evidence at a rate of speed which did endanger the life and limb of persons there and was not careful and prudent, if you ▮▮▮ so find, and if you further believe and find from the evidence that the act of the driver of said automobile in so driving said automobile at a rate of speed which was not careful and prudent, if you so find, was the sole proximate cause of the collision and injuries to the plaintiff, if you so find, then and in that case plaintiff is not entitled to recover against the defendant herein and you will find your verdict for the defendant, but you are instructed that the negligence of the driver of the automobile in which plaintiff was riding, if any, is not to be imputed to the plaintiff in determining whether the said driver's negligence, if any, was the sole proximate cause of the collision mentioned in the evidence."

As we have said, the trial court was of the view that this instruction was prejudicially erroneous under the circumstances. The instruction, obviously, is a so-called "sole cause" instruction. The respondent, in justification and defense of the trial court's views, says there was no evidence warranting the giving of such an instruction. The respondent also says the instruction was misleading and prejudicial in that it did not include the phrase "and not due to any negligence on the part of the defendant as set forth in other instructions given you herein." The respondent takes the position that such a clause is essential to all sole cause instructions.

The appellant, on the other hand, contends that the evidence presents a typical "sole cause" situation and that the instruction correctly and properly submitted the question to the jury in language substantially and previously approved. He says the word "sole" is a commonly used, generally understood word and the jury could not but know that it meant, in its context, that the collision must have been due to Williams' negligence *only*, *alone* and *solely* before they could

exonerate him (the appellant) of liability. He says the instructions can all be read together with facility and without conflict and that therefore the jury was not misled or confused.

As we have noted, the defendant did not claim by his pleadings, his evidence or his instructions that Betty was guilty of contributory negligence and neither did he seek to impute Williams' negligence to her in order to escape liability or defeat her claim but it does not follow that he could have no other means of exonerating and exculpating himself of blame and liability. There is no magic in the word "sole" nor in the phrase "sole cause" and perhaps they have been used overmuch (see Hopkins v. Highland Dairy Farms Co., 348 Mo. 1158, 1163, 159 S. W. (2d) 254, 257) but for lack of more expressive and apt language they have been employed to describe another means by which a defendant may absolve himself of liability. If a defendant can present a state of facts (aside from showing contributory negligence on the part of the plaintiff or imputing some third party's negligence to him through an agency relationship) which if found by the jury would absolve him of fault and consequent liability and demonstrate as a matter of fact, if true and found, that some other person or agency than the defendant was "alone; that is the only one" at fault, "the sole author" of the collision and injuries complained of he is, of course, entitled to do so. (The quoted words are from Webster's New International Dictionary.) And if he does present such a state of facts he is entitled to the same right accorded a plaintiff on his facts and his theory of liability, that is to have them hypothesized in an instruction and thus given an opportunity to have the jury find them if the jury is persuaded of their existence and so absolve the defendant of liability. That, as we understand it, is the sense in which the words "sole cause" were used in the leading case of Borgstede v. Waldbauer, 337 Mo. 1205, 88 S. W. (2d) 373. If his, the defendant's evidence, completely exonerates him of fault and is susceptible of an hypothesization demonstrating that the plaintiff's injuries were not due to the defendant's acts or conduct but were wholly and alone due to the negligent acts or conduct of some third person or of the plaintiff himself he is entitled to an instruction submitting those facts to the jury as his theory of the case and the reason he should be exonerated. Borgstede v. Waldbauer, supra; Watts v. Moussette, 337 Mo. 533, 85 S. W. (2d) 487.

There may be some confusion and question as to how this problem should and can be properly submitted in various types of cases but confining the discussion to the situation presented by this instance which does not involve the humanitarian doctrine or contributory negligence and which by specific instruction excludes imputed negligence the questions are, first, whether it was permissible under the defendant's evidence and second, if so whether it was submitted in an acceptable manner.

█ Here the plaintiff, Betty, relied on and made a submissible case of primary negligence against the defendant consisting, █ according to her evidence and the hypothesization of the instruction covering her theory of the case, of Kelly's driving and operating his automobile on the wrong side of the street. The defendant claimed and his evidence, if believed, was to the effect that the accident and Betty's injuries were not due to or caused by negligence on his part (under his testimony he was not negligent in any manner) because he was driving his car on the right and proper side of the street in a careful and prudent manner but that Williams, Betty's host, suddenly drove over the hill at an excessive rate of speed, maintaining his course in the middle of the pavement and that his negligence alone in so driving the Chevrolet automobile was the one and only cause of the collision and resulting injuries. Obviously if the defendant's evidence is found to be the true narrative of the manner and cause of the occurrence, that he was driving his automobile as close to his right hand side of the street as practicable and was never, as he says, near the center line of the street but was exercising the highest degree of care and driving in a careful and prudent manner but that Williams' car suddenly appeared over the hill being driven down the middle of the street at an excessive rate of speed, he was not negligent in any manner and was, therefore, entitled to be absolved of fault and liability. Under his version of the occurrence the only fault and cause of the collision was the negligence of Betty's host without his, the defendant's conduct, contributing or concurring in any way to cause the occurrence complained of and, therefore, responsibility for the occurrence lay with Williams. These facts and this version of the casualty present a situation entitling the defendant to have them hypothesized and found by the jury thus exculpating and acquitting him of fault and liability. Smith v. Star Cab Co., 323 Mo. 441, 19 S. W. (2d) 467; Mendenhall v. Neyer, 347 Mo. 881, 149 S. W. (2d) 366; Long v. Mild, 347 Mo. 1002, 149 S. W. (2d) 853; Stanich v. Western Union Telegraph Co., 348 Mo. 188, 153 S. W. (2d) 54; Schroeder v. Rawlings, 348 Mo. 824, 155 S. W. (2d) 189; Hopkins v. Highland Dairy Farms Co., 348 Mo. 1158, 159 S. W. (2d) 254; Boyce v. Donnellan (Mo. App.), 168 S. W. (2d) 120.

█ But, considering the words of the instruction in their commonly understood meaning, reading all the instructions together and construing this instruction in view of the tests applied to instructions generally, was the defendant's theory of his case, acquitting him of liability, hypothesized and submitted in an acceptable manner? The facts count. The plaintiff-respondent points out that the clause "and, not due to any negligence on the part of the defendant, as set forth in other instructions" is omitted from the instruction and says that logic and sound reasoning, as well as the previously decided cases, compel its inclusion in an instruction as one of the essential elements

of the so-called "sole cause" doctrine. The defendant-appellant says that the "not due to the negligence of the defendant" clause is not only not required but that the jury could not have been misled or have failed to understand that he, the defendant, must not have been negligent and that the clause requiring the jury to find Williams' negligence to be "the sole proximate cause of the collision and injuries to the plaintiff" was a sufficiently plain and clear direction to that effect. Again, there is no more magic in the abstraction "and not due to the negligence of the defendant" than there is in the abstraction "sole cause" itself. Neither of these matters may be cryptically submitted to and found by the jury on the hypothesis of abstractions only. Boland v. St. Louis-San Francisco Ry. Co. (Mo.), 284 S. W. 141; Shumate v. Wells, 320 Mo. 536, 9 S. W. (2d) 632. This is not to say that the idea embodied in the abstraction "and not due to the negligence of the defendant" is not a part of and inherent in the doctrine of "sole cause" (Hopkins v. Highland Dairy Farms Co., supra) but it must be submitted to and hypothesized for the jury upon the *facts*—facts which, if found and true, demonstrate that the casualty was not due to the negligence of the defendant. It is true that the clause designated and named "and not due to the negligence of the defendant" has usually been embodied in so-called "sole cause" instructions. Rishel v. Kansas City Public Service Co. (Mo.), 129 S. W. (2d) 851; Long v. Mild, supra; Schroeder v. Rawlings, supra; Boyce v. Donnellan, supra. And see Smith v. Star Cab Co., 323 Mo. 441, 445, 19 S. W. (2d) 467, 468 where this abstraction was submitted in a separate instruction. But the jury does not find the conclusion that the accident was not due to the negligence of the defendant but the jury finds, upon the defendant's hypothesized facts as they are made to appear from his evidence and viewpoint, as a fact that he was not negligent and the conclusion embodied in ▮ the abstraction follows. It makes no difference what the abstract element is, as to the instruction the question is whether it hypothesizes such facts that under those facts, if found by the jury, the defendant is absolved of fault and that, in this case, the third party alone is to blame for the collision and injuries, otherwise, a so-called "sole cause" situation is not made to appear as a matter of fact. Stanich v. Western Union Telegraph Co., supra; Shields v. Keller, 348 Mo. 326, 153 S. W. (2d) 60; Hopkins v. Highland Dairy Farms Co., supra.

▮ We have set out the instruction and it hypothesizes the facts adduced by Kelly's evidence from which it is made to appear, if believed and found by the jury, that Betty's host, Williams, drove and operated the automobile in which she rode as a guest at an excessive rate of speed and was therefore negligent but where are the facts from which it could be found as a fact that Williams alone was negligent or that Kelly was not negligent and that his negligence had nothing to do with the collision and Betty's resulting injuries? His

testimony was that he was never on the wrong side of the street. Furthermore, he said that Williams suddenly appeared over the hill at an excessive speed, in the middle of the street, without ever varying his course. It takes these additional facts and circumstances, in this case, to make it appear that Williams' negligence alone caused the collision. The instruction, by an hypothesis of facts, does not exclude the possibility that both Kelly and Williams were negligent and that the negligence of both caused the collision. And that, of course, would make the collision result from concurrent negligence which would not exonerate Kelly from liability to Williams' guest, Betty. Fassi v. Schuler, 349 Mo. 160, 159 S. W. (2d) 774. While the jury is asked to conclude that Williams' negligence was the "sole proximate cause of the collision" no facts are hypothesized upon which the jury could and should base such a finding even though there was evidence from which it could be found had it been hypothesized and the instruction, therefore, does not present a complete state of facts and circumstances exonerating Kelly of negligence and demonstrating that someone else, alone, was at fault and the responsible cause of the collision. Instruction No. 4 failed to hypothesize a state of facts and circumstances completely demonstrating a "sole cause" situation and for that reason the trial court properly sustained Betty's motion for a new trial. The missing elements were not supplied by instructions hypothesizing the plaintiff's case. Stanich v. Western Union Tel. Co., supra; Kick v. Franklin, 345 Mo. 752, 137 S. W. (2d) 512. In language, construction and technique the instruction contains the identical vices pointed out as erroneous in Hopkins v. Highland Dairy Farms Co.. On its facts the case is almost identical with Long v. Mild and, therefore, ". . . *his instruction must hypothesize facts which show he was not guilty of any negligence, and that plaintiff was, in order to show a situation in which a finding of sole cause could be made.*"

The judgment is affirmed and the cause remanded. *Westhues, C.,* concurs; *Bohling, C.,* concurs in result.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.