Leslie HOOK (Plaintiff), Appellant,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a corporation (Defendant), Respondent.

No. 30004.

St. Louis Court of Appeals. Missouri.

Nov. 5, 1958.

See, also, 296 S.W.2d 123.

Charles A. Mogab, Donald S. Hilleary, St. Louis, for appellant.

L. F. Stephens, St. Louis, for respondent.

ANDERSON, Judge.

This is an action by plaintiff to recover damages for the alleged loss of his wife's society, services and consortium claimed to have resulted from personal injuries sustained by her as the result of a collision between defendant's bus and an automobile in which she was a passenger; to recover for medical expense incurred for the treatment of his wife's injuries; and for the damage to his automobile. The trial below resulted in a verdict and judgment for defendant. Plaintiff has appealed.

The collision occurred on September 4, 1953, at the intersection of Horton Place and Hodiamont Avenue in the City of St. Louis. Hodiamont Avenue, at this point, runs north and south and is approximately 35 feet wide. Horton Place runs in a northeasterly and southwesterly direction and is 36 feet wide southwest of the intersection and 30 feet wide northeast thereof. The record discloses that Horton Place at its intersection with Hodiamont Avenue does not extend directly across the latter, but that the southeast curb line of Horton Place, east of Hodiamont, is approximately a prolongation of the northwest curb line west of Hodiamont. Both streets are crossed by streetcar tracks which run in a northwesterly and southeasterly direction. The west rail of these tracks as it crosses Horton Place is about 105 feet from the west curb of Hodiamont. These tracks cross Hodiamont about 200 feet south of the intersection. There were stop signs at all four corners of the intersection. The stop sign for northbound traffic on Hodiamont was located a few feet south of the south curb line east of Hodiamont.

The collision occurred at about 5:45 a. m. It was raining and the streets were wet.

Plaintiff was driving a '46 Mercury automobile, and his wife and child accompanied him. Just prior to the collision plaintiff had turned north onto Hodiamont from Maple Avenue, a block south of the intersection in question. The headlights on plaintiff's car were on and the windshield wipers were operating; his car was traveling 6 or 8 feet from the east curb line as he crossed the tracks south of the intersection, and continued at that distance from the curb as he proceeded toward the intersection. Plaintiff testified that when he reached a point about 75 feet south of the intersection he saw the defendant's bus on Horton Place approaching the intersection from the west. The front end of the bus had about reached the streetcar tracks at that time. Plaintiff did not thereafter watch the movement of the bus. According to plaintiff's testimony the headlight on the bus was not lit at the time, nor were the lights within the bus turned on. The bus was traveling about 6 to 8 miles per hour at the time. Plaintiff's speed was from 12 to 15 miles per hour. Plaintiff did not come to a complete stop when he reached the stop sign, but had reduced the speed of his car to about 2 or 3 miles per hour when he reached a point two or three feet from the stop sign; he was three car lengths or about 45 feet from the stop sign when he began to slow down for the stop sign; he then shifted to second gear, looked to his right, and proceeded forward, accelerating the speed of his car to 6 or 8 miles per hour. Thereafter, plaintiff's wife saw the bus and exclaimed, "Oh, my God, there's a bus." At that time, according to the wife's testimony, plaintiff's car had passed the south curb line of Horton Place. She also testified that the speed of plaintiff's car after it passed the stop sign was three or four miles an hour at the most. Plaintiff testified that he saw the bus when his wife warned him just an instant before the collision. The bus was then about 6 feet in front of his car, and plaintiff could not estimate the speed of the bus at that time. Immediately after seeing the bus

plaintiff took his foot off the accelerator, but did not have time to apply the brake. Plaintiff's wife testified that she saw the bus about a second before the collision, and that her attention was directed toward the bus by a light, which was to their left.

Plaintiff did not swerve either to the right or left from the time he left the stop sign until the collision occurred, and testified he did not skid. The left front of plaintiff's car collided with the right front corner of the bus. Neither plaintiff nor his wife heard any horn sounded prior to the collision. Plaintiff did not sound the horn on his car. Plaintiff's car was traveling 6 or 8 miles per hour at the time of the collision. About two seconds elapsed from the time plaintiff accelerated the speed of his car, after slowing down for the stop sign, until the collision occurred. The impact occurred 3 or 4 feet south of the center line of East Horton Place; i. e., Horton Place east of Hodiamont Avenue. After the impact plaintiff's car traveled 3 or 4 feet and came to rest with its front end a few feet beyond the center of East Horton Place. Plaintiff stated his car was pushed slightly toward the east. Plaintiff, when asked if there was anything to block his view of the bus when it was out in the intersection and when he was at the stop sign, replied: "No, except it was behind me."

Plaintiff's wife received personal injuries and his automobile was damaged. Since the extent of the wife's injuries and the damage suffered are not issues on this appeal, it will not be necessary to review the evidence regarding same.

Winfred A. Edwards, the operator of the bus, testified on behalf of the defendant and stated that he drove the bus from a parking lot behind the Hodiamont Garage. It was raining at the time. The windshield wipers on the bus were operating. The interior lights were lit, and the running lights on the outside of the bus were turned on. When Edwards reached the intersection in question he stopped the bus with

the front end about even with the west curb line of Hodiamont. The right side of the bus was then about 6 feet from the south curb of Horton Place. The operator's intention was to turn north into Hodiamont. While stopped, Edwards saw the headlights of two automobiles coming south on Hodiamont; he waited until these automobiles passed in front of the bus and then he started to roll, at the same time looking toward the south when he saw the headlights of an automobile coming north on Hodiamont, which automobile turned out to be the automobile of plaintiff. The headlights which he then saw were at the railroad tracks, about 200 feet south of the intersection. Edwards proceeded in making his turn to the north at a speed of 1 mile an hour. The on-coming automobile was traveling about 25 miles an hour, close to the center line of the street. Edwards continued to watch this automobile to see if it was going to make the boulevard stop at Horton Place. Edwards had the front side door of the bus open and watched the on-coming automobile through this door. There was no other traffic around there at the time. Thereafter, Edwards stopped the bus because it looked like the automobile was not going to make the boulevard stop. Edwards stopped with the right front corner of the bus just about a foot east of the center of Hodiamont. The bus, when stopped, was headed northeast, with its front end past the south curb of Horton Place east of Hodiamont. The automobile did not make the boulevard stop but continued coming straight, and collided with the bus. The point of impact was at the right front corner where the door is fastened onto the bus. The part of the automobile that came in contact with the bus was the hub-cap, the side of the left front fender, and the cowl just below the windshield. The automobile came to rest about 3 feet in front of the bus. After the collision Edwards got out of the bus and spoke to plaintiff. Edwards said: "What's the matter, boy?" Plaintiff replied: "I didn't see you, my windshield wipers wasn't working."

On cross-examination Edwards testified that when he decided that plaintiff was not going to observe the stop sign, plaintiff was about 6 feet south of the stop sign and had reduced his speed to about 15 miles an hour. Edwards stated that plaintiff continued at that rate of speed until the collision occurred.

Frank Eresh, a police officer testifying for the defendant, stated that plaintiff told him at the scene of the accident that he applied the brakes on his automobile and slid into the bus. Like testimony was given by Officer Capasso, who was also defendant's witness. Plaintiff denied making such statement. The operator of the bus when asked if it appeared as though plaintiff's automobile was sliding on the street just before the collision, replied that he could not determine whether or not the automobile slid. Eresh further testified that the bus driver stated that the automobile was approximately 15 feet from him when he first became aware of the danger of collision. Eresh also stated that plaintiff's wife told him the lights on the bus were out at the time it was making the turn into Hodiamont. Officer Capasso also testified he thought plaintiff's wife told him the lights on the bus were out at the time. Capasso further stated he thought there were light standards on all four corners of the intersection.

The plaintiff, by Instruction No. 1, submitted the case solely upon humanitarian negligence in failing to stop or slacken the speed of the bus after the driver thereof saw or by the exercise of the highest degree of care could have seen the automobile of plaintiff in a position of imminent peril of being struck.

The Court, at the request of defendant, gave Instruction No. 5, which was a sole cause instruction. Said instruction is as follows:

"The Court instructs the jury that if you find and believe from all of the credible evidence that the plaintiff, Leslie Hook, drove his automobile

northwardly on Hodiamont Avenue accompanied by his wife, Mary Hook, and entered the intersection of Horton Place and Hodiamont Avenue at a speed of approximately fifteen miles per hour and without bringing his automobile to a full stop in compliance with the stop sign for northbound traffic at said intersection, and if you find that at the time Leslie Hook entered the intersection the motorbus mentioned in the evidence had already entered the intersection from the west and had stopped at an angle facing in a northeastwardly direction with its right front corner at approximately the center line of Hodiamont Avenue and at a point approximately fifteen feet north of said stop sign for northbound traffic on Hodiamont, and if you find that Leslie Hook thereafter drove the left front fender of his northbound automobile into and against the right front corner of said stopped motorbus and if you find that by the exercise of the highest degree of care Leslie Hook could have seen said stopped motorbus in time thereafter to have brought his automobile to a stop or to have swerved the same to the right, and by so doing could thus and thereby have avoided the collision, and if you further find that in so doing plaintiff failed to exercise the highest degree of care and was negligent and such negligence on his part, if any, was the sole cause of the collision and the injuries that Mary Hook sustained and the damages, if any, that plaintiff sustained, and if you further find that said collision and the plaintiff's wife's injuries and plaintiff's damages, if any, were not due to, or in any way caused by any negligence on the part of the defendant in any of the particulars set out in other instructions submitted to you herein, then, in that event, plaintiff is not entitled to recover herein and your verdict must be in favor of the defendant."

The court then, at the request of plaintiff, gave Instruction No. 6, which is as follows:

"You are instructed that Instruction Number 5 just read to you is what is known as a 'sole cause' instruction. By that is meant that the negligence, if any, therein submitted by the defendant against the plaintiff would have to be, if found by you, the sole and exclusive cause of the collision before defendant would be entitled to a verdict thereunder. On the other hand, if you find that the defendant was negligent, if so, in any respect submitted in the instruction numbered 1, contributing to cause the collision and injury to plaintiff's wife and damage to his automobile as a direct result thereof, if you so find, then you are instructed that your verdict must be in favor of the plaintiff and against the defendant, St. Louis Public Service Company, a corporation."

Appellant contends that the court erred in giving Instruction No. 5, because: (1) no sole cause situation was presented by the evidence, since defendant's own testimony and the reasonable inferences therefrom show defendant guilty of humanitarian negligence and plaintiff's conduct to be no more than a concurring cause of the collision; (2) the facts hypothesized failed to show that plaintiff's negligence was the sole cause of the collision, and did not preclude a finding of humanitarian negligence under plaintiff's verdict-directing instruction; and (3) there was no substantive evidence to show that the automobile of the plaintiff could have been stopped or swerved within the distance of 21 feet, going fifteen miles per hour on a wet, slippery pavement.

■ In determining whether there was evidence to sustain the giving of a sole cause instruction for a defendant, we consider the evidence most favorable to the defendant. Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S.W.2d 892;

Borgstede v. Waldbauer, 337 Mo. 1205, 88 S.W.2d 373; Stanich v. Western Union Tel. Co., 348 Mo. 188, 153 S.W.2d 54; Steinmetz v. Nichols, 352 Mo. 1047, 180 S.W.2d 712; Ketcham v. Thomas, Mo.Sup., 283 S.W.2d 642.

■ Plaintiff, in presenting his argument that no sole cause situation was shown by the evidence, contends that defendant's own evidence convicts it of humanitarian negligence which was a concurring cause of the collision. It is urged that had Edwards, the bus driver, who was going one mile an hour or approximately one and one-half feet a second, stopped the bus two-thirds of a second sooner, the bus would have come to rest at the center line. of Hodiamont and no collision would have occurred. It is said that plaintiff, going 25 miles per hour, would then have been 25 feet further south, or 46 feet from the point of collision, and in a position of imminent peril because of his inability to stop short of the point of impact. Plaintiff, in making this argument, overlooks certain other facts shown by the evidence.

It was shown that there was a stop sign at Horton Place for northbound traffic on Hodiamont Avenue. The defendant's evidence shows that plaintiff, as he approached this stop, reduced the speed of his car from 25 miles per hour to 15 miles an hour, thus indicating an intention to observe the law before entering the intersection. At least, a jury could so find. Plaintiff testified that he began to slow down 45 feet south of the stop sign, which would be 60 feet from the point of collision. The testimony of Edwards was, that it was not until plaintiff had reached a point 6 feet south of the stop sign that he realized that plaintiff was not going to observe the stop sign. The front end of the bus at that time had reached the center of Hodiamont. Under these additional facts, the jury could have reasonably found that it was not until the automobile reached a point 6 feet south of the stop sign that the peril of collision arose. In other

words, the jury would have been justified in finding that the bus driver had a right, and every reason, to believe that plaintiff was paying attention to his surroundings and would observe the law, and, when it became apparent that he was not going to do so the defendant's bus driver did not thereafter have the ability to avert the collision. The jury could also find that if plaintiff had been in the exercise of due care as he approached the intersection, he would have realized the danger of collision in time to have taken appropriate measures to avoid colliding with the bus. In our judgment, the evidence, considered in the light most favorable to defendant, presented a sole cause situation. Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743; Hopkins v. Highland Dairy Farms Co., 348 Mo. 1158, 159 S.W.2d 254; Jants v. St. Louis Public Service Co., 356 Mo. 985, 204 S.W.2d 698; Pearson v. Kansas City Ice Co., Mo.Sup., 234 S.W.2d 783; Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S.W.2d 892; Semar v. Kelly, 352 Mo. 157, 176 S.W.2d 289.

Plaintiff, however, contends that Instruction No. 5 was improper in form, for the reason it failed to hypothesize facts which would exclude a finding of humanitarian negligence.

■■ In order for a jury to find that plaintiff's conduct was the sole cause of the collision, the facts shown by the evidence and relied upon by the defendant must have the legal effect of proving that there could have been no humanitarian negligence on the part of defendant. Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743. We have held that the facts relied upon by defendant did present a sole cause situation, but find that Instruction No. 5 fails to submit facts which would negative liability under the humanitarian doctrine. There is omitted those facts which tend to show that plaintiff's peril arose after it was too late for the bus driver to take effective measures to avert the collision. Those facts, briefly, were that as plaintiff approached

Horton Place he decreased the speed of his automobile so that it appeared to be stopping for the stop sign, and could have been stopped at a place where it was not in a position of danger of collision with defendant's bus; but, instead of stopping, plaintiff drove into a position of peril at a time when defendant did not have the ability with the means at hand to avert the collision, by stopping or slackening the speed of said bus—the negligence charged in plaintiff's humanitarian submission. Failure to hypothesize these facts renders the instruction erroneous. Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743; Klecka v. Gropp, Mo.Sup., 278 S.W.2d 790; Hopkins v. Highland Dairy Farms Co., 348 Mo. 1158, 159 S.W.2d 254; Long v. Mild, 347 Mo. 1002, 149 S.W.2d 853; Pearson v. Kansas City Ice Co., Mo.Sup., 234 S.W.2d 783; Semar v. Kelly, 352 Mo. 157, 176 S.W.2d 289; Johnson v. Cox, Mo.Sup., 262 S.W.2d 13.

 Defendant's Instruction No. 5 authorizes a verdict for defendant upon a finding, among other facts, that plaintiff could have seen the "stopped motorbus in time thereafter to have brought his automobile to a stop or to have swerved the same to the right, etc." The evidence shows that the bus came to a stop when plaintiff's car was six feet south of the stop sign and 21 feet from the bus. There was no evidence in the record of the distance in which plaintiff's automobile could have been stopped under the conditions then and there prevailing. Except within certain limits, we cannot take judicial notice of the distance required to stop an automobile. Certainly, it cannot be said that it is common knowledge that an automobile traveling 15 miles an hour on a wet, slippery pavement can be stopped in 21 feet. Mallow v. Tucker, Mo.Sup., 281 S.W.2d 848; McCombs v. Ellsberry, 337 Mo. 491, 85 S. W.2d 135. It was, therefore, error to submit failure to stop as a charge of negligence, since there was no evidence to support such theory. Miller v. Kansas City

Public Service Co., 238 Mo.App. 247, 178 S.W.2d 824; Raymond on Instructions, Vol. 1, page 74, § 92.

Respondent, in defense of instruction five, says that the distance in which plaintiff had to stop was not limited to 21 feet; that there was no reason why plaintiff should not have seen the bus when plaintiff was 200 feet south of the intersection; and that it is a matter of common knowledge that an automobile traveling 25 miles an hour could be stopped in 200 feet. Suffice it to say, those facts were not submitted by the instruction. In our review of instruction five we are limited to the facts hypothesized, which were that the plaintiff's automobile was traveling 15 miles per hour and that plaintiff could have stopped his car after he saw the bus stopped in the intersection. That was the theory submitted, and it is our duty to ascertain if there was evidence to support it. Whether an instruction predicating the facts now urged by respondent would be proper is not before us.

 It is also urged by respondent that defendant is not bound by the testimony that plaintiff was traveling 15 miles an hour, but, for the purpose of making a case under instruction five, defendant may avail itself of the testimony of plaintiff that he was traveling 2 or 3 miles an hour as he passed the stop sign. This would be contrary to the evidentiary theory of the case as submitted in the instruction, and cannot be allowed. Fisher v. Gunn, Mo.Sup., 270 S.W.2d 869.

It will not be necessary to notice other alleged errors assigned as to instruction five, since such will not likely recur upon another trial.

The judgment is reversed and the cause remanded for a new trial.

RUDDY, P. J., and WOLFE, J., concur.