WILLIAM SHIELDS, Appellant, v. GUS KELLER.—153 S. W. (2d) 60.

Division One, July 2, 1941.

Rehearing Denied, July 25, 1941.

*Everett Hullverson* and *Louis Yaffe* for appellant; *Orville Richardson* of counsel.

328

*Leahy, Walther & Hecker* and *Fred A. Eppenberger* for respondent.

HYDE, C.—This is an action for $25,000 damages for personal injuries. Plaintiff's case was submitted solely upon the humanitarian doctrine. The jury found for defendant. Plaintiff has appealed from the judgment entered.

330

· Plaintiff assigns error in instructions. Plaintiff was injured while attempting to cross Market Street in St. Louis, carrying a bowl of food covered with a white paper, about 8 P. M., February 8, 1939. He testified that he attempted to cross from the north to the south side of the street (taking shorter steps than ordinarily to keep from spilling the food) at a place, where there was a lamp post and street light, straight across the street from the west side of 22nd Street going south. (22nd Street goes north from Market 80 feet farther east.) There was cobblestone pavement eight feet wide on the north side of Market Street; then there was smoother (cement) paving 22½ feet wide between the south edge of the cobblestones and the north rails of the two street car tracks in the center of the street. Market Street was 76 feet wide from curb to curb. Plaintiff said when he "got out about seven feet south of the curb to the end of this cobblestone parking space" he waited for three or four cars to pass. He saw another car coming west 125 to 150 feet away. Thinking he had time to cross the street, he took two or three steps south, but seeing the car coming faster he stepped back closer to the edge of the cobblestones ("two feet out from the cobblestones") and stopped when the car was about 50 feet away. He said "when he got within about 15 feet . . . he just curved in all at once at an angle and the right front bumper hit my left leg." He said the car "was traveling forty-five or fifty miles an hour."

· Defendant's testimony was that plaintiff was struck about 40 feet farther west than he stated; that he was driving "about eight or nine feet out from the curbstone;" that plaintiff "stepped out from in front of a parked automobile" and "suddenly appeared" by his right fender "moving toward the car;" and that the first time he saw plaintiff he was about six inches away from his car and about nine feet away from the curb. Defendant said "the parked automobile was just about three or four feet behind the point of impact." (Plaintiff denied there was a car parked at the place he crossed.) Defendant said plaintiff came in contact with his right front fender "coming at a rapid pace;" that he then applied his brakes immediately; that he stopped in seventeen or eighteen feet; and that he did not at any time swerve his car. Defendant said his car "was going at about twenty or twenty-two miles an hour." The bowl plaintiff was carrying struck defendant's windshield and cracked it, "about nine inches from the extreme right hand side of the windshield" and not quite halfway up. Defendant further testified that the street lights on Market Street were lit; that it was not difficult to see; that his headlights were on; and that there was nothing to prevent him from swerving his car southwest. Defendant had evidence (corroborated by police officers) that there were no marks on his bumper or on the front part of his fender; that the headlight set in the fender was not broken; that the license plate holder was not bent; that even the dust

on the front of the car was not disturbed; but that there were brush marks on the back part of the right front fender between the wheel and the door, where the fender was clean for six or eight inches.

Mrs. Wessler, defendant's stenographer who was riding on the right (north) side of his car, testified as follows:

"I suddenly saw something, a man it was, just about a foot from the right front fender, and he was walking into the side of the car. . . . He was carrying something in his hand; and he continued walking, and this object struck the windshield, shattering the windshield. . . . The impact took place about three or five feet west of a parked car. . . . He walked into the side of the car behind the wheel, close to the windshield."

█ Instruction No. 5, was, as follows:

"The Court instructs the jury that if you find and believe from the evidence that on the occasion in question defendant was operating an automobile westwardly over and along the north side of Market Street, without █ negligence on his part, and that plaintiff then and there walked southwardly into the street immediately to the west of an automobile parked at the north curb of Market Street, if you so find, and that said parked automobile, if you so find, prevented defendant from seeing plaintiff until it was too late for defendant to avoid plaintiff's injury, then you will find your verdict for defendant."

Plaintiff contends that this instruction narrowed the zone of peril to discovered rather than discoverable peril, and made liability depend upon what defendant saw and did rather than upon what, by the exercise of the highest degree of care, he could have seen and done. Certainly, "too late" states the matter very indefinitely. This could have been made clearer by referring to the defendant's duty under the humanitarian rule, submitted in plaintiff's main instruction, which began when plaintiff's position of imminent peril began. Plaintiff further contends that this instruction was not supported by the evidence because defendant had no evidence to show that the parked car prevented defendant from seeing plaintiff (and because the physical facts are otherwise) until it was "too late" for him to avoid striking him. This is in the nature of a converse humanitarian instruction no doubt intended to require the jury to make a finding of fact contrary to one of the basic facts of the humanitarian rule essential to a verdict for plaintiff; namely: That defendant saw or by the exercise of the highest degree of care could have seen plaintiff in a position of imminent peril in time to have thereafter avoided striking him. Plaintiff says that it entirely leaves out "could have seen." We think that this requirement of the humanitarian rule (at such a place) was covered (although perhaps not clearly enough) by the word "prevented." Nevertheless, it emphasized

lack of negligence in "operating" the car, rather than in the duty of lookout, which was the real issue.

Defendant says that substantially this same instruction was approved in Oliver v. Morgan (Mo.), 73 S. W. (2d) 993. However, the element of suddenness of the appearance and approach of the injured person from behind the parked car into a position of imminent peril was a very different factor in that casualty than here. In that case, the instruction referred to a six-year-old boy who (under defendant's evidence) suddenly ran into the street, between two cars parked in the middle of the block, only five or six feet, in front of defendant's car. Clearly, in that case, there could be an issue, as to the parked car preventing discovery of such peril, in the exercise of the highest degree of care, as to such a small boy running from in front of it; and such an instruction would not have been prejudicial in that case because the situation was clear under defendant's evidence. Here plaintiff was a man and it was not contended that he was running with his bowl of food; nor was it contended that the front end of the parked car was high enough to completely hide him and prevent defendant from seeing him. (Particularly if he was 3 to 5 feet in front of the parked car.) Defendant said that, so far as view being obstructed, he could have seen him in front of such a parked car in the daytime. Thus his theory was that it was partly the light conditions rather than only the parked car which prevented him from seeing plaintiff. Furthermore, the trouble also here is that defendant did not see plaintiff at all until he was only a few inches from his fender, so that plaintiff had walked at least two or three feet beyond the parked car before defendant did see him; although he had previously been in a position, where in the exercise of the highest degree of care, it is at least reasonable to believe he could have seen him. Defendant admitted that "if you were looking exactly at that point" probably he could have seen plaintiff walking in that two or three feet between the parked car and the point, only six inches from his fender, where he did first see him. Therefore, there was at least a jury question (considering plaintiff's zone of imminent peril did not begin until after he was beyond the parked car) as to whether defendant could have seen him in a position of imminent peril after he stepped beyond the parked car and before he was six inches from defendant's right front fender; and if so what he could have done thereafter to avoid striking him. Since defendant was driving on a public street where, under the humanitarian rule as we apply it, he had the duty of keeping a lookout, this instruction, as to the parked car alone preventing discovery of plaintiff's peril, was not warranted by his evidence. Defendant would have been entitled to a converse instruction as to his ability in the exercise of the highest degree of care to see plaintiff in a position of imminent peril (in time); but a proper one should fully cover the actual situation according

to what was shown by defendant's evidence. We hold that, under this evidence, basing such a finding solely on the obstruction of the parked car was error prejudicial to plaintiff.

Instructions Nos. 6 and 7 were, as follows:

No. 6. "The Court instructs the jury that even though you believe and find from the evidence that plaintiff and the automobile mentioned in the evidence collided on the occasion mentioned in the evidence, yet if you further believe and find from the evidence that from the time plaintiff reached a position of peril of colliding with said automobile until the collision between said automobile and plaintiff, the driver of said automobile *was exercising due care in the operation* of said automobile, then and in that case plaintiff is not entitled to recover and you will find your verdict for the defendant."

No. 7. "The Court instructs the jury that by the phrase 'due care,' as used in these instructions with reference to the *parties* to this suit, is meant the highest degree of care which a very careful, prudent and skillful automobile operator would exercise under the same or similar circumstances."

Plaintiff's complaint as to Instruction No. 7 is that it refers to the care of both *parties* when, in a case submitted solely under the humanitarian doctrine, the care of a person in a position of imminent peril is not an issue. As to Instruction No. 6, plaintiff complains that it is so broad and general (particularly the part we have italicised which is the only finding required) as to give the jury a roving commission and be confusing; that it is erroneously limited (like Instruction No. 5) to care in operation of the car omitting the duty of exercising care to discover plaintiff's position of peril; and that it is not supported by defendant's evidence because he admitted he did not see plaintiff until almost the moment of collision and did not apply his brakes or swerve until after the collision. Defendant points out that these same instructions were given in the case of Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S. W. (2d) 742, where a judgment for defendant was affirmed. However, the only objection made to the instructions in that case was to the use of the term "due care." This court held therein, in view of the definition of "due care" and its specific application to the driver of the automobile, that this term "due care" should not be held misleading. While under the whole submission we might be justified in holding that Instruction No. 7 was not prejudicial error (since no instruction referred to any duty of care of plaintiff), nevertheless, it was not technically correct, could have been confusing in its reference to "the *parties*" (not considered in the Doherty case), and should have been refused in such form. [See Schipper v. Brashear Truck Co. (Mo.), 132 S. W. (2d) 993.] Likewise, if the trial court had sustained a motion for new trial because it thought its effect had been to mislead the jury, we would likely affirm its order. [See Arnold v. Alton Ry. Co., 343 Mo. 1049,

124 S. W. (2d) 1092; Poague v. Kurn, 346 Mo. 153, 140 S. W. (2d) 13, l. c. 18.]

Plaintiff's objections to Instruction No. 6 are well taken, especially under the situation in this case, where the really decisive issue was whether defendant in the exercise of the highest degree of care in the performance of his duty as to lookout could have seen plaintiff in a position of imminent peril sooner than he did. It was of course impossible for defendant to have done anything *"in the operation"* of the car, to avert plaintiff's injury after he saw him (only six inches from his fender) under defendant's evidence. This instruction contained nothing more than a general abstract statement making a finding of "due care in the operation of said automobile" by defendant the basis of a verdict in his favor. The term "operation" would hardly be understood to include "lookout." This instruction requires no finding of any specific facts and gives the jury the broadest kind of roving commission. Of course, since plaintiff admits he saw defendant's car approaching, the danger zone in this case was narrower than in the case of an oblivious plaintiff. [Smithers v. Barker, 341 Mo. 1017, 111 S. W. (2d) 47.] Nevertheless, the jury could have found, under the evidence in this case, a zone of imminent peril, and plaintiff's position of imminent peril therein, between the parked car and the path of defendant's car in the street, under the evidence of either party. They could also have found ability of defendant, in the exercise of the highest degree of care, to discover plaintiff in such position of imminent peril in time to have thereafter, at least, swerved and avoided striking him. Such a general abstract statement does not make a good instruction. [For reasons why abstract instructions authorizing a verdict are erroneous under our jury system see Stanich v. The Western Union Telegraph Co., 348 Mo. 188, 153 S. W. (2d) 54, decided concurrently herewith.] The abstract character of this instruction was not raised in Doherty v. St. Louis Butter Company, supra. We must hold it erroneous, and particularly prejudicial in this case because we think its effect would be to aggravate the error in the giving of the other erroneous instructions herein.

Instruction No. 8 (sole cause instruction) was, as follows:

"The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in evidence plaintiff walked from the north curb of Market Street into and against the side of the automobile mentioned in evidence *near* the right front fender thereof, and if you further find and believe that plaintiff's act in so walking against the side of defendant's automobile, if you so find and believe, was the sole cause of whatever injuries, if any, plaintiff sustained on said occasion and was not due to any negligence on the part of the defendant, in any of the particulars set out in other instructions herein, then and in that case plaintiff is not

entitled to recover of defendant and you will find your verdict for the defendant.''

Plaintiff says that this instruction is not supported by defendant's evidence; that it fails to require a finding of facts which would show that defendant was not guilty of any negligence; that it is confusing and misleading; and that it fails to contain a plain direction that contributory negligence is not to be considered in determining recovery under the humanitarian doctrine. As to this latter matter, it is to be noted that there was no other instruction in the case which contained such direction, as was true in Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S. W. (2d) 562. However, in Mendenhall v. Neyer, 347 Mo. 881, 149 S. W. (2d) 366, it is said that statements of such explanatory character (imputed negligence was there considered) should not be made an essential requirement of a defendant's instruction which sufficiently hypothesizes a sole cause act, requires a finding that such act was the sole cause and that defendant was not negligent in any particular submitted; but would leave it to plaintiff to so instruct. No such requirement (as to an explanatory statement concerning contributory negligence or imputing negligence) was made in Doherty v. St. Louis Butter Company, supra, or Borgstede v. Waldbauer, 337 Mo. 1205, 88 S. W. (2d) 373, which first authorized sole cause instructions based on facts shown by defendant's evidence. We think a defendant does all that should be required of him if he properly hypothesizes facts (based on his evidence) showing a sole cause situation, requires a finding therefrom of sole cause and of his freedom from any negligence charged against him. We, therefore, think it is proper to leave such statements for plaintiff to request if he desires the jury to have them and so rule. It will be noted that Dilallo v. Lynch, 340 Mo. 82, 101 S. W. (2d) 7, only made such a requirement in a case submitted on both primary negligence and the humanitarian rule. However, since such a confusing submission is at plaintiff's option we think he should have the duty of preparing and requesting explanatory statements in that situation also, and to that extent the Dilallo case is disapproved.

We think defendant's evidence was sufficient to support a sole cause instruction, because, taken most favorably to defendant, it tends to show that plaintiff suddenly appeared close to the side of defendant's front fender walking toward it at a rapid pace; that he came from closely in front of a parked car, under poor light conditions; that all of these circumstances interfered with defendant's ability to see him to such an extent that he could not have seen him in time (to take any effective action) by the exercise of the highest degree of care; that the space between the parked car and the path of defendant's car was only about two steps; and that he walked against the right fender of defendant's car just behind the front wheel. However, this instruction did not hypothesize such a state of

336

facts. [See discussion of sole cause instructions in Stanich v. The Western Union Telegraph Company, 348 Mo. 188, 153 S. W. (2d) 54, decided concurrently herewith.] This instruction required no finding as to the light conditions or the position of the parked car, and thus authorized a sole cause negligence finding against plaintiff even if the jury believed plaintiff's testimony that he went into the street directly in front of a street light and that there was no parked car at the place where he crossed. (These facts could have been submitted following the first clause of the instruction, after the first comma, as follows: "and if you further find that plaintiff suddenly came into said street in close proximity to defendant's car, from closely in front of a parked car, at a place too distant from any street lights to be plainly lighted thereby, and if you further find, etc.;" see sole cause instruction approved in Branson v. Abernathy Furniture Company, supra; see also Prather v. Rausch, 344 Mo. 888, 129 S. W. (2d) 910.) Moreover, the required finding that plaintiff walked "into and against the side of (defendant's) automobile . . . near the right front fender thereof," is contrary to the evidence. According to plaintiff's evidence the right end of the bumper (which would be on the right side of the car and near the right front fender) was the part of the car that hit him, and this could hardly show a sole cause situation. According to defendant's evidence, the brush marks caused by the collision were on the right front fender instead of on the side of the car near it. Furthermore, the physical facts show that plaintiff could not have walked into the side of the car behind the right front fender, because, if he had done so, the bowl he carried could not have struck and broken defendant's windshield. Defendant says that such a sole cause instruction was approved in Doherty v. St. Louis Butter Company, supra. However, the facts hypothesized in the instruction in that case were very different; namely, that a boy "walked or ran against the side of the truck . . . near the left rear fender." Since that truck was concededly being driven forward (and defendant's evidence showed he ran into the back part of it) such facts would show a sole cause situation. [Long v. Mild, 347 Mo. 1002, 149 S. W. (2d) 853; the same thing is true of the sole cause instruction approved in Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S. W. (2d) 562.] We hold that the facts hypothesized in Instruction No. 8 were insufficient to authorize a finding of plaintiff's sole cause negligence and that this was prejudicial to plaintiff.

 Plaintiff also assigns as error the refusal of an offer of testimony of his physician, who examined him a month after his injury, as follows:

"I offer to prove by this witness that the fact that he had a fracture of the type he has in the lower leg, accompanied by the fracture of the type he has in the upper leg indicates that he was

hit with the auto from the left of him, which indicates that he was struck by the front of the automobile, rather than that he walked into the automobile, as the defendant claims.''

We rule that this offer (of an opinion as to what plaintiff was doing when injured) was properly refused as argumentative, speculative, and clearly outside any qualifications shown by the witness as a medical expert.

The judgment is reversed and the cause remanded. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.