MILES ALVIN BOOTEE, Appellant, v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation.—No. 39171.—183 S. W. (2d) 892.

Division One, December 4, 1944.

*E. E. Thompson, Alfred H. Osborne, Thompson & Osborne, Charles Rubins* and *Lillie Knight* for appellant.

*Charles L. Carr* and *Harding, Murphy & Tucker* for respondent.

718

DALTON, C.—Action for $10,000 damages for personal injuries alleged to have been sustained on account of the negligence of defendant. The jury returned a verdict for defendant and judgment was entered accordingly. Plaintiff has appealed.

On June 19, 1942, at about 12:30 A. M., while plaintiff was crossing 15th street at or near Woodland avenue in Kansas City, he was struck and injured by one of defendant's trolley buses. Plaintiff's petition charged both primary and humanitarian negligence, but the cause was submitted solely on humanitarian negligence in failing to stop the trolley bus, slacken its speed and change its course or swerve it and thereby avoid injuring plaintiff after defendant's trolley bus operator saw, or by the exercise of ordinary care could have seen, plaintiff in a position of imminent peril and oblivious thereto.

Appellant assigns error on the giving of instruction 2 (a sole cause instruction requested by defendant) and on the admission in evidence of certain records of the Bell Memorial Hospital of Kansas, offered by defendant. Respondent contends that the instruction was correct and the evidence admissible; that, in any event, "plaintiff was not injured because he was not entitled to recover," regardless of the alleged errors; and that "the judgment was for the right party and should be affirmed." If plaintiff did not make a case for the jury, the

errors assigned are immaterial. Bello v. Stuever (Mo. Sup.), 44 S. W. (2d) 619, 620; Hendricks v. Weaver (Mo. Sup.), 183 S. W. (2d) 74. A statement of the evidence most favorable to plaintiff is required.

According to plaintiff, he was walking north, "kind of fast," on the west side of Woodland avenue, crossing 15th street on the green traffic light and watching the headlights of a southbound car on Woodland avenue. Before starting across, he had observed defendant's westbound trolley bus standing on the east side of the intersection, where it had stopped to discharge passengers. He did not notice the bus again until he had reached a point about 6-8 feet from the north curb of 15th street (at northwest corner of the intersection), when he saw defendant's trolley bus bearing down upon him from the east, 6-8 feet distant, and at a speed of 8-10 miles per hour. Plaintiff was then in the middle of the path of the bus and he jumped north in an effort to get out of the way, but he was struck by the right front end of the bus and was knocked down and injured. The bus did not swerve, change its course or speed, nor sound any signal before plaintiff was struck.

Plaintiff was a colored man 19 years of age. He was wearing a blue suit and a pearl gray hat. Since 1931 he had suffered with bilateral leukoma, referred to as a film or scum over both eyes, a milky-white opacity of the cornea, which materially affected his ability to see. He testified, however, that, on the night in question, he was able to see the north curb line of 15th street when he was 40 feet away from it; that he saw the trolley bus on the opposite side of 15th street and across Woodland avenue, when he started to cross 15th street; and that he was able to observe the traffic lights at the intersection.

There was much conflicting evidence concerning the existing weather conditions. It had been sprinkling rain and, as plaintiff went north across 15th street, it began to rain harder. It was not raining "real hard." The wind was blowing some, "blowing light." It had been a stormy night, but "had kind of quieted down." For the purpose of determining whether plaintiff made a case for the jury, we must disregard other evidence of plaintiff's and defendant's witnesses concerning the extreme severity of the storm at the time of the collision, since the jury could disbelieve such evidence. As plaintiff walked north across 15th street, there was fair visibility. A garage man, who was leaving his place of business to go home, was standing by his parked automobile on the east side of Woodland avenue (75 feet south of 15th street). He looked northwest, at an angle across Woodland avenue (30 feet wide) and partly across 15th street (76 feet wide), and saw plaintiff walking "pretty fast" north across 15th street and along the west side of Woodland avenue. When plaintiff was about 25 feet from the north curb of 15th street, the bus was about 15 feet away to the east and was approaching at 10 to 12 miles per hour. The witness saw the bus strike plaintiff and then go on some 20 feet

beyond before it stopped. Certain witnesses on the bus testified that they were able to "see far enough out (of the bus) to recognize any buildings around the immediate vicinity," on both sides of the bus, and to observe the red traffic signal on Woodland avenue, while the bus was stopped, and the green traffic light when the bus started across Woodland avenue. One passenger observed an "object" moving across 15th street, when the bus started across Woodland avenue, and the "object", it developed, was plaintiff, "a pedestrian crossing north in the regular crossing lane on the west side of Woodland."

The trolley bus in question was a rubber tired vehicle for operation on the streets in the transportation of passengers. It was propelled by a motor, located in the rear of the bus, and the motor was operated by electricity supplied from overhead trolley wires. Such a bus could be swerved 12 feet either way without losing connection with or coming "out from under the trolley wires." According to the evidence, under conditions existing at the time and place in question, to wit, with wet streets, a slight decline in grade and some 23 passengers in the trolley bus, the bus at a speed of 10 miles per hour could be brought to a stop in an emergency with reasonable safety to the bus and passengers in 15 feet; at 8 miles per hour in 12 feet; and at 6 miles per hour in 8 feet.

For defendant, the trolley bus operator testified that the bus was traveling not over 2 or 3 miles per hour in crossing Woodland avenue and about 6 miles per hour at the time of the collision; that on account of the severity of the rainstorm, visibility was reduced to 30 to 35 feet; that he could not see outside of the headlights; that no one was within the range of the headlights when he started across Woodland avenue; that he first saw plaintiff, when plaintiff came running in a northernly direction directly into the rays of the headlights of the bus, from the left side, at a point 60 feet west of the west line of Woodland avenue; and that plaintiff when first seen was about 6 feet in front of the bus and directly in front of the left headlight. The operator said he applied the brakes, swerved the bus to the right, and stopped the bus in 7 or 8 feet, only 2 or 3 feet after plaintiff was hit. It will not be necessary to review the evidence further since we only need to determine from the evidence whether plaintiff made a case for a jury and that there was evidence upon ▆▆▆▆ which to base defendant's sole cause instruction.

▆▆ In support of its theory that no case was made for a jury, the respondent insists that "this is not a last chance case"; that "the humanitarian doctrine is not in this case"; that, when plaintiff came into peril, it was too late to stop, slacken the speed and swerve the bus and avoid the collision; that "no human ingenuity could have saved plaintiff"; that under the humanitarian doctrine there was no duty on the operator of the trolley bus to act, until plaintiff was in a position of certain, immediate, impending, and "imminent peril";

that plaintiff did not come into a position of imminent peril until he was "directly in the path of such vehicle or so close thereto" that he could not stop short of its path; and that there was nothing to indicate plaintiff was oblivious to the danger or did not see the lighted bus. Respondent relies upon the evidence of its own witnesses, upon some of plaintiff's evidence, and upon State ex rel. Fleming v. Bland, 322 Mo. 565, 572, 15 S. W. (2d) 798, 800; Krause v. Pitcairn, 350 Mo. 339, 167 S. W. (2d) 74, 76; Zickefoose v. Thompson, 347 Mo. 579, 148 S. W. (2d) 784, 791; Smithers v. Barker, 341 Mo. 1017, 111 S. W. (2d) 47, 53; Knorp v. Thompson, 352 Mo. 44, 175 S. W. (2d) 889, 890; and other cases.

For the purpose of determining the issue presented, we must disregard defendant's evidence, unless it aids the plaintiff's case, and consider only the evidence most favorable to plaintiff and the most favorable inferences therefrom. When we do so, we find that the zone of imminent peril was not as narrow as respondent suggests, but extended beyond the immediate path of the bus, since it was a rainy night and plaintiff was walking "pretty fast", at a "good fast walk", "walking right along", with "head up" directly into the path of the on-coming bus. Crews v. Kansas City Public Service Co., 341 Mo. 1090, 111 S. W. (2d) 54, 57. There was evidence from which a jury could infer that plaintiff was oblivious to his own peril, if such fact was not fully admitted by defendant's plea of contributory negligence in its answer to plaintiff's charge of primary negligence. In any case, not having seen the plaintiff, until plaintiff was directly in front of the bus, the operator did not rely on plaintiff stopping before coming into the actual path of the bus. See, Shields v. Keller, 348 Mo. 326, 153 S. W. (2d) 60, 62; Payne v. Reed, 332 Mo. 343, 59 S. W. (2d) 43, 46. Considered most favorably to plaintiff, the plaintiff was in full view of the operator, who could have seen that plaintiff was oblivious to his own peril, that he was walking directly into the path of the bus and that he was in imminent peril of being struck by the bus, when there was yet time to stop, slacken speed or turn the bus aside.

Respondent particularly emphasizes the fact that plaintiff did not see the bus, until he was directly in the center of its path and only 6-8 feet in front of it, and that defendant's operator did not see plaintiff until plaintiff was in front of the bus and the bus was within 5 to 6 feet of plaintiff. These facts are not decisive because, under the evidence, defendant's operator was chargeable with "discoverable peril" and the fact that the operator discovered plaintiff's peril too late to save plaintiff, or the fact that plaintiff was oblivious to his own peril too long to save himself, constituted no defense for defendant against the charge of negligence upon which the cause was submitted to the jury. The question is whether, upon a most favorable view of the whole evidence, the operator of the trolley bus, by the

exercise of ordinary care, could have seen plaintiff in a position of imminent peril from the approaching bus and in time thereafter by the means at hand, with reasonable safety to himself, the bus and its passengers, to have stopped the bus, slackened its speed, and turned it to one side or swerved it and thereby have avoided injuring plaintiff. We hold that plaintiff made a case for the jury on the grounds of negligence submitted and that the demurrer to the evidence was properly refused. Steger v. Meehan (Mo. Sup.), 63 S. W. (2d) 109; Miller v. Williams (Mo. Sup.), 76 S. W. (2d) 355; Lindsey v. Vance, 337 Mo. 1111, 88 S. W. (2d) 150; Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S. W. (2d) 742; Blunk v. Snider, 342 Mo. 26, 111 S. W. (2d) 163; Pitcher v. Schoch, 345 Mo. 1184, 139 S. W. (2d) 463; Shields v. Keller, supra, (348 Mo. 326, 153 S. W. (2d) 60, 62). It is, therefore, necessary to consider the several errors assigned.

Instruction 2 is in part, as follows: ". . . if you further find that the operator of said trolley bus was at all times referred to in evidence exercising such care as an ordinarily careful and prudent person would exercise under the same or similar circumstances, if so, and if you further find that plaintiff ran into the path of said ▮▮▮ bus and into the rays of the headlights thereon at a point approximately 6 feet away from said bus while it was moving at a speed of approximately 6 miles per hour, if so, and if you further find that plaintiff at said time was not exercising such care for his own safety as an ordinarily careful and prudent person would exercise under the same or similar circumstances, if so, and that his failure to exercise such care for his own safety by running into the path of said bus and in such close proximity thereto as aforesaid, if so, same was the sole cause of said collision and resulting injuries, without negligence upon the part of the defendant or its operator in question, if so, then your verdict should be in favor of the defendant and against plaintiff."

Appellant contends "there was insufficient evidence upon which to base a sole cause instruction" and that Instruction 2, submitting the issue of sole cause, was erroneous.

In determining whether there was evidence to sustain the giving of an instruction for a defendant, we consider the evidence most favorable to the defendant, the party who offered the instruction. Steinmetz v. Nichols, 352 Mo. 1047, 180 S. W. (2d) 712; Rothe v. Hull, 352 Mo. 926, 180 S. W. (2d) 7, 8. Appellant's theory is that the evidence does not justify a finding that defendant was entirely free from the negligence relied upon by plaintiff. See, Hillis v. Home Owners' Loan Corporation, 348 Mo. 601, 154 S. W. (2d) 761, 766 (where defendant's evidence left no foundation on which to base a sole cause instruction). Appellant says the defendant "wholly failed to offer any evidence tending to prove plaintiff's injuries were caused solely by his own negligence." Appellant further refers to

evidence favorable to plaintiff and insists that the slightest swerve to the left or any slackening of the speed of the bus "would have permitted plaintiff to pass out of danger." Considering the evidence most favorable to defendant, particularly, concerning the severity of the rainstorm, the place of the collision as being 60 feet west of Woodland avenue and the operator's testimony concerning his own and plaintiff's conduct, and disregarding plaintiff's evidence and defendant's less favorable evidence, we find the evidence in the record entirely sufficient to support a sole cause instruction on behalf of defendant. Shields v. Keller, supra; Johnson v. Dawidoff, 352 Mo. 343, 177 S. W. (2d) 467. The evidence being sufficient to sustain a sole cause instruction, defendant was entitled to a sole instruction, if a proper one was requested. Semar v. Kelly, 352 Mo. 157, 176 S. W. (2d) 289, 292.

Appellant's criticism of instruction 2, is (1) that, the "instruction is a mere abstract statement of law, and does not hypothesize specific facts excluding defendant's negligence and justifying a verdict for defendant on the theory that plaintiff's negligence was the sole cause of his injuries"; and (2) that, "said instruction erroneously hypothesized defendant's duty under the humanitarian doctrine and is (sic) confusing and misleading." Appellant contends that the rule, established by many cases, is that a sole cause instruction, in addition to hypothesizing the facts relied upon to establish plaintiff's negligence, must submit the ultimate facts relied upon by defendant to show that there was no concurring or contributory negligence on defendant's part directly causing or contributing to the injury to plaintiff. Appellant further says that the instruction "narrows the zone of peril to discovered rather than discoverable peril"; that it "makes defendant's liability depend upon what defendant's operator saw and did rather than upon what, by the exercise of ordinary care, he could have seen and done"; that it permits "the jury to pass upon a question of law without any specific facts upon which the jury could base such a finding"; and that the instruction "completely ignores the question of defendant's duty under the humanitarian doctrine." Respondent, on the other hand, insists that instruction 2 excluded contributory and concurring negligence, "negatived defendant's negligence and hypothesized the facts sustaining the sole cause defense, which, if found to be true theory, wholly exculpated defendant from negligence and settled the sole cause on plaintiff." Respondent refers to the instruction as a converse of plaintiff's main instruction and as hypothesizing defendant's sole cause theory. Respondent contends that plaintiff's principal instruction and defendant's (sole cause) instruction 2 "should be and were read and considered together by the jury"; that defendant "is not obligated to include or hypothesize in his instruction facts

relied on by the plaintiff for recovery''; and that one instruction covers plaintiff's theory and the other defendant's theory.

We think the instruction wholly fails to hypothesize facts which exclude negligence of defendant in the manner charged in the petition and submitted by plaintiff's principal instruction. In such respect the instruction hypothesizes no facts at all, but contains a mere abstract statement of law and calls upon the jury for a legal conclusion, to wit, was defendant's operator ''exercising such care as an ordinarily careful and prudent person would exercise under the same or similar circumstances . . . without negligence on the part of the defendant or its operator in question?'' It required the jury to reach such a legal conclusion without hypothesizing any facts and without indicating whether the care referred to was with reference to the operator's own safety, the safety of his passengers, or plaintiff's safety after the operator saw, or could have seen, plaintiff in imminent peril. In no sense did the instruction purport to submit facts for a converse finding on the issue of the humanitarian negligence submitted by plaintiff's principal instruction. Nor did it contain any provision requiring a specific finding by the jury against the issue of defendant's negligence as submitted in plaintiff's principal instruction. See, Doherty v. St. Louis Butter Co., supra, (339 Mo. 996, 98 S. W. (2d) 742, 745); Gower v. Trumbo (Mo. Sup.), 181 S. W. (2d) 653; Johnson v. Dawidoff, supra. The particular reason for such a requirement in a sole cause instruction is to make out a sole cause situation necessary to relieve defendant and to make sure that the jury excludes any concurring or contributory negligence of defendant which may have directly caused or contributed to the injury. The facts to sustain a finding of no negligence on the part of defendant and of negligence on the part of plaintiff as the sole cause of his injury must be submitted to the jury. Fassi v. Schuler, 349 Mo. 160, 159 S. W. (2d) 774, 777; Semar v. Kelly, 352 Mo. 157, 176 S. W. (2d) 289, 293. We repeat, Instruction 2 hypothesizes no facts for a finding by the jury that defendant was not guilty of negligence under the humanitarian doctrine, as charged and submitted. It required no finding that in the exercise of ordinary care the trolley bus operator did not see plaintiff and could not have seen him after he reached a point of imminent peril and in time, thereafter, by the exercise of ordinary care with the means at hand, with safety to the operator, the bus and its passengers to have stopped the bus, slackened its speed, swerved it or turned it aside and have avoided injuring plaintiff, as required by the humanitarian doctrine. Reiling v. Russell, 345 Mo. 517, 134 S. W. (2d) 33, 38; Gray v. Columbia Terminals Co., 331 Mo. 73, 52 S. W. (2d) 809, 812; Martin v. Fehse, 331 Mo. 861, 55 S. W. (2d) 440, 441. The instruction does not properly submit the question of plaintiff's

negligence as the sole cause of his injury. It does not require the jury to find that, knowing he was almost blind, plaintiff ran across 15th street in the nighttime in the rain and storm and at a point 60 feet away from the regular crossing and came directly into the path of the moving bus, so near thereto that the operator thereof, after he first saw or by the exercise of ordinary care could have seen plaintiff, could not in the exercise of ordinary care, with reasonable safety to himself, the bus and its passengers, have stopped the bus, slackened its speed and swerved or turned it aside and have avoided injuring the plaintiff. Since the instruction erroneously directed a verdict for defendant on the basis therein stated, the error was not cured by other instructions. Stanich v. Western Union Tel. Co., 348 Mo. 188, 153 S. W. (2d) 54. We must hold that the instruction was erroneous and the giving of it was reversible error. Long v. Mild, 347 Mo. 1002, 149 S. W. (2d) 853, 860; Shields v. Keller, supra, (348 Mo. 326, 153 S. W. (2d) 60); Stanich v. Western Union Tel. Co., supra, (348 Mo. 188, 153 S. W. (2d) 54, 58); Hopkins v. Highland Dairy Farms Co., 348 Mo. 1158, 159 S. W. (2d) 254, 257; State ex rel. Snider v. Shain, 345 Mo. 950, 137 S. W. (2d) 527, 531; Carson v. Evans, 351 Mo. 376, 173 S. W. (2d) 30; Semar v. Kelly, supra; Fassi v. Schuler, supra; Gower v. Trumbo, supra, (181 S. W. (2d) 653, 655).

Appellant assigns error on the admission of alleged hearsay evidence offered by defendant, consisting of hospital records of the Bell Memorial Hospital, located in the State of Kansas, purporting to relate to treatment and examinations of plaintiff. Appellant contends that "there was no proof of the laws of the State of Kansas showing that this hospital was a public office or that these records were public records required to be kept by the laws of that state"; and that the evidence was hearsay and highly prejudicial to appellant. Respondent contends that the evidence "was competent and properly admitted"; that "no timely, competent or proper objection was made to the induction of" the evidence; that "counsel ▮▮▮ made no motion to strike the evidence or instruct the jury to disregard it"; that the "evidence was harmless because the jury found against plaintiff on the merits"; and that "there was nothing preserved for review." It will be unnecessary to further consider the assignment. The error, if any, is not likely to occur upon a retrial of the cause.

For the error in giving instruction 2, supra, the judgment is reversed and the cause remanded. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.