Arminta HICKERSON, Plaintiff-Appellant,

v.

Herbert PORTNER, Jr., Defendant-Respondent.

No. 47088.

Supreme Court of Missouri,

Division No. 2.

July 13, 1959.

Robert Burns, Cleo V. Barnhart and Barnhart & Sommers, St. Louis, for plaintiff-appellant.

James J. Amelung, Holtkamp, Miller & Risch, St. Louis, for defendant-respondent.

BROADDUS, Special Judge.

This action arises out of an automobile accident which occurred on November 27, 1956. The plaintiff, Arminta Hickerson, was a passenger in an automobile operated by her husband when it was involved in a collision with an automobile being driven by the defendant. Plaintiff filed suit against defendant seeking damages in the amount of $15,000 on account of personal injuries sustained by her in this collision. Her petition charged the defendant with both primary and humanitarian negligence. The trial resulted in a verdict in favor of the defendant, upon which final judgment was entered. After an unsuccessful motion for a new trial, plaintiff perfected her appeal.

Upon this appeal plaintiff makes but one point; namely, that the trial court erred in giving Instruction No. 3 on behalf of defendant. Defendant contends, first, that the instruction was correct; second, that if it be erroneous, the error was harmless because plaintiff failed to make a submissible case. Of course, if defendant's second contention is true, plaintiff's complaints relative to Instruction No. 3 need not be considered.

The collision out of which this litigation arises occurred at the intersection of Mc-

Kibbon and Natural Bridge Roads in St. Louis County, Missouri. Natural Bridge Road is a main thoroughfare with divided lanes. It runs east and west. It is intersected at right angles by McKibbon, a secondary road, running in a general northerly and southerly direction. At this intersection the westbound and eastbound traffic lanes of Natural Bridge Road are separated by a parkway approximately one hundred feet wide. Southbound vehicles on McKibbon Road, passing between the two traffic lanes of Natural Bridge Road, are confronted with a stop sign situated about forty feet north of the eastbound traffic lanes of Natural Bridge Road. The eastbound traffic lanes of Natural Bridge Road pass over the crest of a hill situated about four hundred and fifty feet west of the intersection of Natural Bridge and McKibbon Roads.

The automobile in which plaintiff was riding was being driven by her husband southwardly on McKibbon Road between the westbound and eastbound portion of Natural Bridge Road. Mr. Hickerson testified that he brought his automobile to a stop with the front end of his car even with the stop sign, at which time he looked to his right, or to the west, and could see to the top of the hill, 450 feet away, and saw no eastbound traffic within that distance; he then started forward proceeding at a speed of from three to four miles per hour; he again looked to his right when the front of his car reached a point "about two feet" from the north edge of the eastbound slab of Natural Bridge Road, and again saw no eastbound traffic. He was proceeding at a speed of three to four miles per hour at all times. He drove onto the paved portion of Natural Bridge Road and was there collided with by the eastbound automobile of the defendant, the left front of defendant's car striking the right front fender of the Hickerson car. The eastbound traffic lanes of Natural Bridge Road are twenty-five feet wide. The front end of Mr. Hickerson's automobile was six or eight feet south of the center of the east-

bound traffic lanes of Natural Bridge Road at the time the collision occurred. He had therefore proceeded eighteen to twenty feet onto the pavement at the time the collision took place. He never at any time saw the defendant's automobile approaching prior to the collision.

The plaintiff testified that her husband stopped at the stop sign and then proceeded slowly southwardly onto the pavement where the collision occurred. She at no time observed the defendant's automobile prior to the impact.

James Kennedy, a passenger in defendant's automobile at the time the collision occurred, testified on behalf of the defendant. He testified that he was "fooling with the radio" and glanced up when he heard the defendant sound the horn; that at that time he saw the plaintiff's automobile which was then southbound, but still north of the concrete pavement. At that time he estimated the defendant was about one hundred fifty feet west of McKibbon; that he then looked down at the radio again and then the defendant sounded the horn again, at which time he looked up a second time and at that time the defendant was about fifty feet west of McKibbon Road, and that he felt defendant's brakes being applied simultaneously with the sounding of the horn.

The defendant testified that he did not see the automobile in which plaintiff was riding until it reached a point ten to fifteen feet north of the eastbound traffic lane of Natural Bridge Road; that he sounded his horn at that time because he thought the driver of plaintiff's automobile was going to pull out in front of him. He applied his brakes at the time he sounded the horn the second time. He also testified that the weather was good and the pavement dry; that his automobile was in excellent mechanical condition and the brakes were "all right."

■ We are of the opinion that plaintiff's evidence made a submissible case under the humanitarian doctrine as submitted to the

jury under Instruction 1, given at her request.

■ The testimony of defendant that he was 150 to 200 feet west of McKibbon Road, when he first saw the car plaintiff was riding in, and that at that time the car operated by plaintiff's husband was ten to fifteen feet north of the pavement of Natural Bridge, and at that time, the defendant's speed was forty-five miles per hour, is contrary to physical facts. It is to be kept in mind that the testimony of the driver of the plaintiff's vehicle was that after starting up from the stop sign, he proceeded at a speed of three to four miles per hour, and that the fastest speed he attained was four miles per hour. With the plaintiff's car twelve and one-half feet north of the pavement, and reaching a point seven feet south of the center of Natural Bridge Road when the collision occurred, the car plaintiff was riding in, at a speed of four miles per hour, traveled thirty-two feet in 5.33 seconds at 5.86 feet per second. At forty-five miles per hour, the defendant's car traveled 352 feet in 5.33 seconds at sixty-six feet per second. As no greater reaction time was shown by the testimony, we take judicial notice that it is three-fourths of a second or 49.5 feet at forty-five miles per hour. De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628. Therefore, the defendant had 4.58 seconds and 302.5 feet in which to slacken his speed and swerve to the left.

When the car in which plaintiff was riding reached a point two feet north of the pavement, it then traveled 21.5 feet to the point of collision. At a speed of four miles per hour, it took 3.6 seconds, or 5.86 feet per second for the plaintiff's car to travel 21.5 feet. At forty-five miles per hour, the defendant's car traveled eleven times farther, or 236.5 feet in 3.6 seconds, with reaction time of three-fourths of a second consuming 49.5 feet, and leaving 2.85 seconds and 187 feet to slacken his speed and swerve to the left. By the defendant's own testimony, he did not apply his brakes until

he sounded the horn for the second time, and defendant's witness, James Kennedy, testified that when he looked up upon hearing the horn for the second time, the defendant's car was then about fifty feet west of McKibbon Road, and that the horn and the brakes came almost instantaneously.

In other words, by the defendant's own evidence, he moved 137 feet without taking any action until he reached a point fifty feet west of McKibbon Road. The defendant testified that when he first saw the automobile in which plaintiff was riding, he sounded his horn because he thought the plaintiff's car was going to pull out in front of him, and it is to be remembered that when defendant first saw the car plaintiff was riding in, it was then ten to fifteen feet north of the pavement of Natural Bridge Road. Thus it was apparent to the defendant, at that point, that the plaintiff and her husband were oblivious to defendant's approaching vehicle.

As has been stated many times: "Obliviousness widens the imminent peril zone beyond the path of an approaching vehicle and, as a corollary, lengthens the imminent peril zone." Perry v. Dever, Mo.Sup., 303 S.W.2d 1, 6. Under a set of facts much less favorable to the plaintiff than those disclosed in the instant case this court held in the case of Catanzaro v. McKay, Mo.Sup., 277 S.W.2d 566, that the plaintiff had made a submissible case under the humanitarian doctrine.

■ We also take the view that the evidence made a submissible case of primary negligence on the defendant's failure to keep a lookout as submitted to the jury under plaintiff's Instruction No. 2. The defendant testified that there was nothing that would have prevented him from seeing the car that plaintiff was riding in sooner, except that he "just didn't see it." The plaintiff's husband testified that after stopping at the stop sign located forty feet north of the edge of the pavement of Natural Bridge Road he could see to his right or west, on Natural Bridge Road for

a distance of 400 to 450 feet. This testimony was uncontradicted. And both Mr. and Mrs. Hickerson stated that immediately after the collision the defendant said to them "It was my fault, I didn't see you in time to stop."

In the recent case of Evett v. Corbin, Mo.Sup., 305 S.W.2d 469, 472, failure to maintain a lookout was the only specification of negligence submitted to the jury. There we restated the settled rule in this State that: "The defendant, as the operator of a motor vehicle, was under a duty to maintain a lookout ahead and laterally and must be held to have seen what looking would have revealed." (Citing cases.) As we have stated, the evidence clearly shows that defendant could have seen the car in which plaintiff was riding when defendant was at a point 400 to 450 feet west of McKibbon Road. Yet, defendant's own testimony is that he did not observe the car in which plaintiff was riding until defendant's car was 150 to 200 feet west of McKibbon Road.

Instruction No. 3 of which plaintiff complains reads as follows:

"The Court instructs the jury that it is the duty of the driver of every vehicle entering a through highway to exercise the highest degree of care to yield the right-of-way to other vehicles which are approaching so close on the through highway as to constitute an immediate hazard.

"Therefore, you are instructed that if you find from the evidence that the driver of the automobile in which the plaintiff was a passenger drove onto the eastbound lane of Natural Bridge Road at McKibbon Road in an attempt to cross said highway at a time when the defendant's automobile was approaching so close and at such a rate of speed as to constitute an immediate hazard of collision, if you so find, and

"If you further find that the driver of the automobile in which plaintiff was a passenger in so operating his said automobile as aforesaid and under all the facts and circumstances in evidence failed to exercise the highest degree of care and was negligent, and that as a result of such negligence, if any, on the part of said operator of said automobile a collision occurred between the automobile in which the plaintiff was a passenger and the defendant's automobile, and if you further find that the negligence of the driver of the automobile in which the plaintiff was a passenger was the sole cause of said collision resulting in injury, if any, to the plaintiff, and if you further find and believe from the evidence that the defendant was not guilty of any negligence as submitted to you in other instructions herein, then your verdict must be for the defendant Portner."

■ The plaintiff having submitted her case to the jury on the defendant's humanitarian negligence and the defendant's primary negligence in failing to keep a proper lookout, and being entitled to recover if the defendant's negligence in either respect was either the direct or a concurrent cause of her injury, it was prejudicial error for this instruction to abstractly state the law in regard to "right-of-way" at the intersection and to direct a verdict *on the whole case* if the jury found that the plaintiff's husband (a third person) negligently failed to yield the right-of-way. The fact that the defendant had the right-of-way at the intersection and that plaintiff's husband failed to yield the same to defendant is a completely foreign issue in determining whether or not the defendant was negligent under the humanitarian doctrine.

In the Catanzaro case, supra, this court said, 277 S.W.2d loc. cit 571[4] : "Second,— the portions of the instruction dealing with right of way had no place in this humanitarian case irrespective of the error above noted. Neither the abstract statement of the law of right of way (and we need not determine whether it was an accurate statement) nor the attempted application of that principle to the instant facts were appropriately mentioned in this so-called converse humanitarian instruction. This, be-

cause the humanitarian doctrine seizes upon a fact situation as it existed at the time defendant knew or should have known that plaintiff was in imminent peril. Whatever had transpired from the standpoint of either plaintiff or defendant prior to that time could not affect the rights of the parties thereafter."

And in the case of Hangge v. Umbright, Mo.Sup., 119 S.W.2d 382, 384, this language appears:

"This instruction may be a correct declaration of law. It informed the jury that if plaintiff and defendant reached the intersection about the same time, then defendant had the right of way because defendant was to plaintiff's right. There was evidence to sustain the inference that the parties reached the intersection about the same time. Therefore, the jury may have interpreted the instruction to mean that if plaintiff failed in his duty to give defendant the right of way then he was at fault and could not recover. It is apparent that this instruction tended to inject the question of contributory negligence as a defense to plaintiff's cause of action under the humanitarian rule. The instruction is, therefore, erroneous."

See also Rosenfeld v. Peters, Mo.Sup., —— S.W.2d ——.

■ Finally, defendant contends that plaintiff waived any error in Instruction No. 3 by offering Instruction No. 5, which reads as follows:

"The Court instructs the jury that the negligence, if any, on the part of plaintiff's husband cannot be imputed or charged against plaintiff and cannot affect her right, if any, to recover against the defendant, unless such negligence, if any, of plaintiff's husband was the sole and only cause of the collision mentioned in the evidence."

The transcript shows that plaintiff duly objected to the giving of Instruction No. 3. In our opinion, Instruction No. 5 is not common to defendant's sole cause Instruction No. 3, and does not constitute an adoption and waiver by the plaintiff.

The case of Millhouser v. Kansas City Public Service Co., 331 Mo. 933, 55 S.W.2d 673, 677, correctly states the theory of the law of adoption and waiver. The court there said:

"As we have said, the theory on which an error in an instruction for plaintiff cures a like error on defendant's part is that the plaintiff has invited and induced defendant to commit such like error."

In that case, the plaintiff gave an instruction which first advised the jury that negligence, if any, of the driver of the car that plaintiff was in was not imputable or chargeable to plaintiff. It then went on and set out a humanitarian doctrine theory, and ended with the following phrase: " 'unless such negligence, if any, of Austin [driver of car plaintiff was riding in] was the sole cause of the collision' ".

The defendant gave a sole cause instruction. The court properly held that the phrase above mentioned on the bottom of plaintiff's humanitarian instruction, did not constitute a waiver or adoption of defendant's erroneous sole cause instruction.

And in the recent case of Landau v. St. Louis Public Service Co., Mo.Sup., 322 S.W.2d 132, 135, the following language, clearly applicable to the instant question, appears:

"Defendant states in its brief that 'all instructions are to be read together, and if there were any deficiencies in said Instruction No. 3 (and we deny that there were any) they were more than amply supplied by plaintiff's Instruction Nos. 1 and 4.' We do not agree. Instruction No. 3 purported to be a complete submission and directed a verdict for defendant upon a consideration of the directions therein contained and a finding of the facts therein hypothesized. In the situation presented, the prejudicial effect of Instruction No. 3 was neither waived nor cured by the fact that the court, at plaintiff's request, gave

the other instruction mentioned. Sheerin v. St. Louis Public Service Co., supra [Mo. Sup., 300 S.W.2d 483]; Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S.W.2d 892; Stanich v. Western Union Tel. Co., 348 Mo. 188, 153 S.W.2d 54."

For the error in giving Instruction No. 3, the judgment is reversed and the cause remanded.

STORCKMAN, P. J., and EAGER, J., concur.