**Gary Eugene HALL, a Minor, by his father and next friend, Dorwin Hall, Respondent,**

v.

**Verne F. RAGER, Appellant.**

**No. 48856.**

Supreme Court of Missouri,

Division No. 2.

May 14, 1962.

Robert L. Jackson, Kansas City, for appellant.

James E. Lockwood, Brenner, Wimmell, Ewing & Lockwood, Kansas City, Walter B. Patterson, Fort Scott, Kan., for respondent.

PER CURIAM.

In this action plaintiff sought to recover damages in the sum of $50,000 for personal injuries sustained in an occurrence involving the car in which he was riding and a truck operated by an employee of defendant. A trial resulted in a verdict for defendant. Thereafter, the trial court entered an order granting plaintiff a new trial upon the grounds that the court had erred in giving Instructions 7 and 9 at the request of defendant. Defendant has appealed from that order.

While defendant here contends that the said instructions were not prejudicially erroneous, his first and perhaps primary contention is that any error in the instructions would be immaterial because plaintiff failed to make a submissible case, and hence the trial court should have sustained his motion for a directed verdict filed at the close of all the evidence. In determining that contention we will view the evidence in the light most favorable to plaintiff, give him the benefit of all favorable inferences flowing therefrom, and disregard defendant's evidence except as it may aid plaintiff. Erbes v. Union Electric Co., Mo.Sup., 353 S.W.2d 659.

The casualty in question occurred shortly after noon on July 18, 1957, at the intersection of two county roads located approximately six miles northeast of Fort Scott, Kansas. Plaintiff, then 5 years of age, was riding in an automobile being driven by his grandmother, Mrs. Alta Jacquinot. The intersection involved was located a little more than a mile west of the Jacquinot farm home. Both roads were constructed of chat on rock. The east-west road (known as Richards Road) was 25 or 30 feet wide while the north-south road was not that wide. There were no stop signs at the intersection. Mrs. Jacquinot was driving her 1949 Chevrolet westwardly on Richards Road. John Bower was driving defendant's stock truck northwardly on the intersecting county road. The car and truck reached the intersection at about the same time, but, as will hereinafter more fully appear, there was no actual contact between the two vehicles.

Mrs. Jacquinot testified that when her car was one quarter mile east of the intersection she saw defendant's truck about a half mile to the south thereof; that from that point on her view of cars approaching from the south was obscured by corn growing in a field at the southeast corner of the intersection; that her car was going "around" 25 m. p. h. and when she arrived at the east edge of the intersection she saw the truck about 40 to 50 feet to the south traveling at a speed of 50 m. p. h.; that when she saw the truck "I didn't think I had time to go across, * * * I didn't have time to stop. If I had stopped, I would have been right in front of it. * * * I swerved to the right, and I kind of lost control of the car and I went back kind of to the west and hit the ditch on the northwest corner of the intersection and ran into a big bank there. * * * The truck went behind me as I hit the bank, going toward the north. He didn't slow down or he didn't stop. He went straight on to the north through the intersection just as I hit the bank." This witness further testified that as a result of the impact she received certain injuries and that plaintiff's head hit the dashboard and he was rendered unconscious; that the truck driver returned to the intersection and took them to the home of a neighbor who drove them to the hospital.

Defendant presented the testimony of the truck driver, John Bower, who related a much different version of the occurrence. He stated that his truck arrived at the intersection first; that as he started to cross the intersection he looked to the east and saw Mrs. Jacquinot's car from 125 to 150 feet away and "it looked like she put the brakes on and the front end went down and started to slide sideways a little"; that he went on across and her car passed back of the truck and he could see in the rear-vision mirror that it was in the ditch. On cross-examination Mr. Bower testified that as he approached the intersection his view to the east was obscured by tall brush; that his truck was going from 40 to 45 m. p. h. and he did not apply his brakes, reduce the speed of the truck, swerve or sound his horn.

Plaintiff's main verdict-directing instruction conjunctively submitted two assignments of negligence, i. e., (1) that the Jacquinot car entered the intersection ahead of or at the same time as defendant's truck and that defendant's driver failed to yield the right of way, and (2) that the truck was driven into said intersection at a speed of 45 to 50 m. p. h. and that under the circum-

stances detailed in said instruction such speed was negligent.

In considering the first assignment submitted it should be noted that § 8–550, General Statutes of Kansas 1949, provides as follows: "(a) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway. (b) When two vehicles enter an intersection from different highways at the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right. (c) The foregoing rules are modified at through highways and otherwise as hereinafter stated in this article."

Defendant contends that plaintiff failed to make a submissible case of failure to yield the right of way because there is no substantial evidence to the effect that defendant's truck interfered with the right of way of the Jacquinot Chevrolet. His brief recites that "there never was a collision between the two vehicles involved in this case, and, furthermore, there was no evidence that if both cars had proceeded in the same manner as testified to by Mrs. Jacquinot, that there ever would have been a collision between said vehicles. In fact, the evidence strongly indicates exactly to the contrary." He cites cases such as Applegate v. Home Oil Co., 182 Kan. 655, 324 P.2d 203, 208, which state the rule that "mere violations of traffic laws are not themselves sufficient to make the operator of a motor vehicle guilty of actionable negligence in a collision of automobiles; to make him liable it must appear that the violation contributed to the collision and was a proximate cause of the injury sustained."

■■ At the outset of our consideration of this question it should be made clear that the "mere absence of contact does not prevent an act of negligence from being the proximate cause of an injury. This general principle is applicable where a vehicle is forced off the highway, and is in accordance with the rule that he who, by his negligence, creates a dangerous situation is liable to one who, acting as a reasonably prudent person, is injured while attempting to avoid the danger so created. * * * To be the producing or proximate cause of an accident, it is not necessary that there be actual contact between the respective automobiles; the test of whether the negligent acts of two or more persons concurred in contributing to an accident being whether the accident could have happened without the co-operation of such acts." 4 Blashfield, Cyclopedia of Automobile Law and Practice, Part 2, § 2538, pp. 35, 36, and § 2644, p. 146. See also Tilden v. Ash, 145 Kan. 909, 67 P.2d 614, and Garrison v. Ryno, Mo.Sup., 328 S.W.2d 557.

■■ Defendant's contention in regard to nonsubmissibility as to excessive speed is substantially the same as his contention in regard to failure to yield the right of way. He says the speed of defendant's truck was not shown to be a proximate cause of the accident. He states in his brief that "regardless of what defendant's speed was, there was no collision between the two vehicles. Furthermore, there was no substantial evidence that there was ever any danger of a collision * * *. Obviously, whatever defendant's speed was, the proximate cause of the accident here was Mrs. Jacquinot's misjudgment and loss of control of her own car."

We have concluded that plaintiff made a submissible case on both of the assignments. It is not essential to submissibility that plaintiff demonstrate to a mathematical certainty that there would have been a collision unless some action had been taken to prevent it. It is sufficient for the evidence to reasonably support a jury finding that because of the manner in which defendant's truck approached the intersection Mrs. Jacquinot would reasonably have anticipated that a collision would occur unless she took evasive action. When the front of the Jacquinot car arrived at the intersection the driver saw defendant's truck 40 feet to the south traveling at a speed of 50 m. p. h. Mrs. Jacquinot's car

was going 25 m. p. h. Had no evasive action been taken it might be that no collision would have occurred. However, a jury could reasonably have found that under the circumstances Mrs. Jacquinot could reasonably have concluded that there would be a collision unless she took emergency action in an effort to avoid it. As indicated, the evidence was sufficient to warrant the jury in finding that defendant's negligence, in either or both of the respects submitted, was a proximate cause of plaintiff's injuries.

In Tilden v. Ash, supra, it is said that if "appellants had not driven onto No. 10 as they did, there would have been no occasion for the Ash truck to swerve into the proper lane of an approaching car from the west. Except for appellants' conduct the Ash truck could have proceeded westerly by remaining on its proper north side of the slab and the Tilden car could have proceeded east on the south side of the highway which it was rightfully occupying. Because the driver of the Ash truck was also guilty of negligence it does not follow appellants were free from negligence. The fact appellants' truck did not strike the Ash truck does not relieve them of liability for the damage which their conduct, combined with the negligence of another, wrought upon an innocent third party. In Huddy's Cyclopedia of Automobile Law, [vols.] 3, 4, it is said: 'The negligence of a driver in forcing another traveler off the road may be the proximate cause of injuries received by the latter through a collision with an object outside of the road.' Page 48." 145 Kan. 916, 67 P.2d 618. In the case before us there was ample evidence to reasonably support a jury finding that had it not been for the fact that defendant's truck approached the intersection at a high rate of speed (under the circumstances) the Jacquinot car would have remained on the road as it proceeded through the intersection and plaintiff would not have been injured.

Furthermore, in regard to the speed issue, we think it is apparent that evidence to the effect that defendant's driver approached to within 40 feet of the intersection at a speed of 50 m. p. h., when he admittedly could not see vehicles approaching from the east, was sufficient, under all the circumstances in evidence, to reasonably support a finding that such was an excessive and negligent speed. The contention that plaintiff failed to make a submissible case is ruled adversely to defendant.

■ In its order granting plaintiff a new trial the court found that defendant's Instruction No. 7 was erroneous because it failed to "specifically negate the existence of any negligence on the part of defendant and failed to hypothesize the specific negligence of the third person relied upon as the sole cause of the collision." Said instruction reads as follows:

"The court instructs the jury that under the law of Kansas it was the duty of Alta Faye Jacquinot, the driver of the vehicle in which the plaintiff was riding, to drive and operate her vehicle at a reasonable and prudent speed under the conditions then and there existing, and she was under a further duty to drive and keep her vehicle under proper control. You are instructed that if you find and believe from the evidence that Alta Faye Jacquinot, as she drove in a westerly direction approaching the intersection, as mentioned in evidence, if so, was driving her vehicle at an excessive rate of speed under the circumstances then and there present, and if you find and believe that she failed to drive and operate her vehicle in such a manner as to keep same under proper control, under the circumstances then and there present, if so, and that she was thus and thereby negligent, if so, and that as a result of said negligence she caused her said vehicle to drive into the ditch on the northwest corner of the intersection, as mentioned in evidence, and that her negligence in so doing, if you find she was negligent, was the sole cause of the accident and occurrence in question, then your verdict will be for the defendant and against the plaintiff."

We fully agree with the foregoing conclusions of the trial court. The instruction does not, in any manner, negative the existence of negligence on the part of the defendant. Also, while the instruction submits two charges of negligence on the part of Mrs. Jacquinot, it fails to hypothesize any facts which would demonstrate that her acts were the sole cause of plaintiff's injuries. We have recently said that a defendant may "undertake to absolve himself of liability on the ground that the negligence of the plaintiff or of some third person was the sole proximate cause of plaintiff's injuries, and he may submit this issue to the jury by what is referred to as a sole cause instruction. This latter form of an instruction, as contrasted to a converse instruction, concedes that the injuries to plaintiff resulted from the negligence of someone, and it authorizes a finding by the jury for the defendant only if it finds that the negligence of the plaintiff, or someone other than the defendant, was the sole proximate cause of the injuries, and also that defendant was not negligent, or if he was negligent that his negligence was not concurring negligence. Therefore, if the defendant undertakes to absolve himself from liability to plaintiff on the basis of sole cause negligence, he thereby assumes the burden of hypothesizing a statement of facts, supported by the evidence, from which a jury could find that not only did his negligence not contribute in causing plaintiff's injuries, but in addition thereto that the sole proximate cause of plaintiff's injuries was the negligence of someone other than him, and the hypothesization of facts in the instruction, or by proper reference to other instructions, must be complete in both respects." Happy v. Blanton, Mo. Sup., 303 S.W.2d 633, 637. For the reasons heretofore indicated we hold that Instruction No. 7 was prejudicially erroneous. In addition to Happy, our conclusion is supported by the following cases: Semar v. Kelly, 352 Mo. 157, 176 S.W.2d 289, Johnson v. Cox, Mo.Sup., 262 S.W.2d 13, Hopkins v. Highland Dairy Farms Co., 348 Mo. 1158, 159 S.W.2d 254, Stanich v. Western Union Tel. Co., 348 Mo. 188, 153 S.W.2d 54, and Counts v. Kansas City Southern Ry. Co., Mo.Sup., 340 S.W.2d 670.

■ Defendant has briefed the contention that any error in failing to negative defendant's negligence in Instruction No. 7 was cured by Instruction No. 8 which told the jury that if it found that Mrs. Jacquinot and John Bower were both guilty of negligence which combined to cause the casualty, "then such negligence, if any, on the part of Mrs. Jacquinot constitutes no defense whatever to this action." We do not agree. Instruction No. 7 purported to be a complete submission and directed a verdict for defendant in accordance with the findings and directions therein contained. It entirely omitted an essential element of the submission. In that situation the error in question was neither waived nor cured by the fact that the court gave Instruction No. 8 at the request of plaintiff. Hickerson v. Portner, Mo.Sup., 325 S.W.2d 783; Landau v. St. Louis Public Service Co., Mo.Sup., 322 S.W.2d 132; Stanich v. Western Union Tel. Co., supra.

■ It is also contended by defendant that it was unnecessary that the instruction contain a hypothesis of the facts relied upon as a basis for a finding that the conduct of Mrs. Jacquinot was the sole cause of the casualty because "the driving off of the road by Mrs. Jacquinot constituted a *res ipsa loquitur* situation with respect to which defendant was entitled to submit in terms of general rather than specific negligence." There is no merit in that contention. The res ipsa loquitur doctrine has no application in this situation where the evidence on both sides indicated that the casualty resulted from the efforts of Mrs. Jacquinot to avoid a collision with the defendant's truck. Moreover, defendant did not draft the instruction in accordance with the res ipsa loquitur doctrine. It actually submitted two charges of specific negligence. As relates to this point the defect in the instruction was its failure to

hypothesize the facts relating to those assignments. In that situation defendant is in no position to contend that the res ipsa loquitur doctrine would excuse his failure to hypothesize the facts in the instruction.

We deem it unnecessary to extend this opinion by a discussion of the contention that the court erred in giving Instruction No. 9. Prior to another trial counsel for defendant will have the opportunity to reexamine that instruction and make such corrections therein as may be considered necessary in view of the attack made thereon by plaintiff.

The order granting a new trial is affirmed and the cause is remanded.